## In re UNITED COMPANIES FINANCIAL CORPORATION, Debtors.

### Bankruptcy Nos. 99–450 (MFW) through 99–461 (MFW).

United States Bankruptcy Court,
D. Delaware.

Nov. 19, 1999.

---

522

Marcia L. Goldstein, Brian Rosen, Weil Gotshal & Manges, LLP, New York City, for Debtors.

Thomas L. Ambro, Paul N. Heath, Deborah E. Spivack, Richards Layton & Finger, Wilmington, DE, Co–Counsel for Debtors.

Theodore Gewertz, Chaim J. Fortgang, Richard G. Mason, Wachtell Lipton Rosen & Katz, New York City, for Official Committee of Unsecured Creditors.

William H. Sudell, Eric D. Schwartz, Morris Nichols Arsht & Tunnell, Wilmington, DE, Co–Counsel for Official Committee of Unsecured Creditors.

Charles Campbell, Jeffery W. Cavender, Long Aldridge & Norman, LLP, Atlanta, GA, for the Official Committee of Equity Security Holders.

Norman Pernick, Mark Minuti, Saul Ewing Remick & Saul LLP, Wilmington, DE, Co–Counsel for the Official Committee of Equity Security Holders.

Frederic J. Baker, John D. McLaughlin, Daniel K. Astin, Philadelphia, PA, Office of U.S. Trustee.

## *OPINION* [1]

MARY F. WALRATH, Bankruptcy Judge.

### I. INTRODUCTION

This case is before the Court on the Application of the Debtors for an Order Pursuant to Section 327(a) of the Bankruptcy Code for Authorization to Employ Ernst & Young, LLP ("E & Y") *Nunc Pro Tunc* to June 1, 1999, as Financial Advisors. The Application was Supplemented twice to incorporate changes to the terms of the engagement. The Office of the United States Trustee ("UST") objected to the Application. For the reasons stated below, we overrule the objection and ap-

Robert J. Rosenberg, Roland S. Young, Latham & Watkins, New York City, for Ernst & Young, LLP.

---

1. This Opinion Constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

prove the Application, as supplemented and modified herein.

## II. *JURISDICTION*

This Court has jurisdiction over this matter, which is a core proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(1), (b)(2)(A).

## III. *PROCEDURAL AND FACTUAL BACKGROUND*

On March 1, 1999, United Companies Financial Corporation and several of its affiliates (collectively "the Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code. On June 29, 1999, the Debtors filed the Application to retain E & Y. After the UST raised several concerns, and after Judge Walsh's Opinion in *In re Dailey International, Inc.*, Case No. 99–1233 (Bankr.D.Del. July 1, 1999), the Debtors filed two supplements to the Application.

Several of the objections of the UST remain unresolved and an evidentiary hearing was conducted on the Application on October 15 and 28, 1999. Briefs on the issues were submitted by the parties on November 10, 1999.

## IV. *DISCUSSION*

The original E & Y Application had numerous provisions which were subsequently determined to be inappropriate by Judge Walsh in his *Dailey* Opinion. We wholeheartedly agree with our colleague's reasoning and conclusions in the *Dailey* Opinion.

Apparently recognizing that its original Application would be disfavored as a result of the *Dailey* decision, E & Y modified it in several respects. Specifically, the modified Application eliminated the following offensive provisions: Originally, the Application contained the requirement that any dispute over services rendered by E & Y to the Debtors must be submitted to binding arbitration rather than the jurisdiction of this Court. Instead, the current Application provides that the Bankruptcy Court, to the extent it does have jurisdiction, will hear any dispute over the services rendered by E & Y. It is only in the event that it is determined that the Bankruptcy Court does not have jurisdiction, that the dispute will be referred to binding arbitration.

Second, the supplemented Application eliminates any cap on a liability award that may be rendered against E & Y. Originally, the Application had capped such damages at the total amount of fees earned by E & Y during the engagement and had precluded the assessment of consequential, incidental, indirect, punitive or special damages against E & Y.

Third, the amended Application eliminates the draconian indemnification provisions. Originally, the Debtors had agreed to indemnify E & Y from *any* claims brought against it has a result of this engagement, even presumably claims for fraud or willful misconduct by E & Y. The current Application has no indemnification clause.

Fourth, the original (and supplemented) Applications request payment by the Debtors of counsel fees for E & Y, including those fees incurred in prosecuting the retention application. At the hearing on approval of the Application, counsel for E & Y stated that they merely wished to be treated the same as other professionals in this regard. We noted that our obligation to review and approve fee requests was not affected by any prior agreement by the Debtors to pay those fees. We, consequently, reserved the UST's right to object and any decision on that issue until the filing of a fee application by E & Y, which actually requests reimbursement for its attorneys' fees.

The remaining objections of the UST, which were litigated and briefed, are the following: (1) whether the modified alternative dispute resolution provision should be approved; (2) whether the Application itself is moot, since it appears that the

services for which E & Y were originally to be retained are largely being performed by an affiliate, Ernst & Young Restructuring, LLC ("EYR"); (3) whether *nunc pro tunc* approval is appropriate in these circumstances; (4) whether E & Y is precluded from being retained because, by its arrangement with EYR, it has engaged in illegal fee sharing; and (5) whether E & Y's retention should be disallowed because they have failed to make adequate and timely disclosures.

### A. *Alternative Dispute Resolution Provision*

 As noted, the ADR provision in the current E & Y Application is significantly different from the one Judge Walsh disapproved in *Dailey*. The current provision does acknowledge and preserve the jurisdiction of the Bankruptcy Court to hear any disputes arising from the E & Y retention. It is only in those instances where it is determined that the Bankruptcy Court does not have jurisdiction to hear such a dispute, that the Debtors and E & Y have agreed to refer the matter to binding arbitration.

The UST, and the Equity Committee which has joined the UST in objecting to the E & Y retention, argue that even such a limited ADR provision should not be approved. They argue that such arbitration clauses are not common or usual in bankruptcy cases, and that the arbitration provision restricts the rights of other parties, including a trustee if one is appointed in this case. Contrary to the suggestion of the UST, there are many instances where it is appropriate for actions of the debtor to bind a successor trustee. *See, e.g., In re Trout*, 964 F.2d 797, 801 (8th Cir.1992). Simply providing that the ADR provision is binding on a successor trustee is not sufficient to make it objectionable.

Courts have upheld ADR provisions and, in fact, have applauded their use. *See, e.g., Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (there is a strong federal policy in favor of arbitration); *Hays and Company v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir.1989) (bankruptcy court must enforce arbitration provision contained in contract with debtor relating to a non-core matter).

Just as in the *Hays* case, it appears that this ADR provision is applicable only to non-core matters, that is where the Bankruptcy Court does not have jurisdiction over the dispute. In that instance, we would be obligated to follow the Third Circuit ruling in *Hays* and uphold such an arbitration clause.

 Furthermore, we disagree with the tenor of the UST and Equity Committee argument that alternative dispute resolution provisions are inherently inappropriate in the bankruptcy context. Such provisions are normal in the commercial world and even laudable in relieving the court system of some of its burden. We do not think it inappropriate for parties to include such provisions in contracts, even retention applications in bankruptcy cases. Of course, this is with the caveat that, with respect to core matters, the Bankruptcy Court has exclusive jurisdiction which may not be delegated or supplanted by alternative dispute resolution procedures. *See Dailey* at p. 10 (there is no federal policy which favors arbitration provisions seeking to sidestep a bankruptcy court's conventional jurisdiction).

After issuing the *Dailey* decision, Judge Walsh was presented (by E & Y) with a modified ADR provision in *In re Hvide Marine, Inc.*, Case No. 99–3024. That provision is identical to the one in the Second Supplement in this case. Judge Walsh approved the provision in *Hvide* with some modifications: the deletion of provisions barring discovery or equitable relief. Judge Walsh approved ADR as long as it was consistent with the Arbitration Rules for Professional Accounting and Related Services Disputes of the American Arbitration Association, reasoning that

"the accounting profession had significant input into the rules that the Triple A has adopted, and therefore, it seems to me that it would be entirely appropriate for Ernst & Young to be bound by those rules without modifications" which limit the debtor's rights. (*Hvide,* N.T. 10/28/99 at p. 19.) We agree with this conclusion.

The ADR provision contained in the Second Supplement to the E & Y Application, as modified consistent with the *Hvide* decision, may be approved.

### B. *Mootness*

■ The UST argues that, in fact, the Application to retain E & Y is now moot. This is premised on the testimony of David Miller, formerly a partner at E & Y and currently a principal of EYR. Mr. Miller testified that the entire restructuring practice group of E & Y·had been transferred to EYR, effective October 1, 1999. He testified that he is still in charge of the Debtors' engagement but that the work is being performed by both E & Y and EYR personnel. No application had been filed by the Debtors to retain EYR as of the October 28 hearing, although the Debtors' counsel stated that such an application was being prepared.[2]

The UST asserts that to the extent that the current Application seeks approval of the retention of E & Y to perform financial advisory services, that application is now moot because no E & Y personnel are performing significant services for the Debtors. However, it is clear that *some* services are still being performed by E & Y for the Debtors. Mr. Miller testified, for example, that E & Y is still performing valuation services for the Debtors. Therefore, to that extent the Application is still extant and can be approved.

### C. *Nunc Pro Tunc*

■ The UST objected to the request in the Application for *nunc pro tunc* approv-

al. The length of time by which the Application seeks *nunc pro tunc* approval is 27 days, a period which the UST does not normally find objectionable. In fact, the UST recognizes that in large chapter 11 cases, given the press of urgent matters to be determined in the early days of the chapter 11 proceeding, the preparation and filing of retention applications for all professionals may be delayed. If such applications are filed within 30 days of the petition date, therefore, the UST will, not ordinarily object.

However, in this case, the UST objects to the *nunc pro tunc* approval. The basis of the UST's objection is that the delay in this case was caused, not by the normal endeavor to assure that other more urgent matters were completed, but rather because of E & Y's insistence upon terms in its initial engagement which were unusual and, in fact, objectionable as found by Judge Walsh in the *Dailey* case. The UST argues, therefore, that E & Y has not met the exceptional circumstances for *nunc pro tunc* approval as articulated by the Third Circuit. *See, e.g., F/S Airlease II, Inc. v. Simon,* 844 F.2d 99, 105 (3d Cir.1988), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988); *In re Arkansas Co., Inc.,* 798 F.2d 645, 649–50 (3d Cir.1986).

In *Arkansas,* the Third Circuit held that *nunc pro tunc* approval should be limited to "cases where prior approval would have· been appropriate and the delay in seeking approval was due to hardship beyond the professional's control." 798 F.2d at 650. In determining the latter, the Third Circuit stated "this will require consideration of factors such as whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin services without approval; the amount of delay after

---

**2.** In fact, an Application to retain EYR was filed November 12, 1999. Objections are due by November 30, 1999.

the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors." *Id.* The Third Circuit specifically rejected, however, the holding of other courts "that inadvertence or oversight of counsel may constitute excusable neglect sufficient to relieve the parties of the consequences of their inactions." *Id.* at 649.

In applying the *Arkansas* factors in the *F/S Airlease* case, the Third Circuit rejected a *nunc pro tunc* request where the professional to be retained was a sophisticated businessman well aware of the requirements for bankruptcy approval and where, although there were some time pressures for performance of the work, the professional did not seek approval of his retention until a full seven months after he had completed his services and nine months after the petition date.

Applying the *Arkansas* and *F/S Airlease* decisions to the instant case, we find no extraordinary circumstances warranting the approval of E & Y *nunc pro tunc.* E & Y is a sophisticated bankruptcy professional, well aware of the need for prior approval by the Bankruptcy Court before services should be rendered. In numerous other cases before this Court, E & Y has complied with the requirements for prior approval by ensuring that its retention application is filed on the first day of the case or very shortly thereafter.

Although counsel for the Debtors was responsible for filing the retention application, it too is an experienced law firm well aware of the need for prior approval of professionals. In this very case, there were seven applications for retention of professionals filed on the first day. Nei-

ther E & Y nor the Debtors have offered any acceptable explanation for why the Application to retain E & Y could not be filed before work was commenced on June 1, 1999.

E & Y and the Debtors argue that the work to be performed by E & Y was essential to the Debtors' preparation of its business plan. They assert that the urgency of the work required E & Y to commence work before the retention application was filed. However, this should only have accounted for a few days' delay. Given the sophistication of E & Y and Debtors' counsel, a retention application could have been filed more promptly.

The real reason for the 27-day delay is revealed by the Affidavit of the Debtors' Chief Operating Officer, Lawrence J. Ramaekers. The Affidavit states that the delay in filing the Application was to "finaliz[e] the non-economic terms of E & Y's engagement letter with the Debtors." (*See* Affidavit of Lawrence Ramaekers filed October 13, 1999.) It is apparent that the reason for the excessive delay in this case was the fact that the E & Y Application differed significantly from the typical application in bankruptcy cases. Thus, the delay was caused by E & Y itself and is not excusable.

Given that the delay was occasioned by E & Y's insistence on the unusual terms of its engagement, we believe that compensation of E & Y for that period would be inappropriate and prejudicial to other interested parties in this case. Consequently, we will deny the request for *nunc pro tunc* approval and approve the retention of E & Y effective on the date of the filing of the initial Application, June 28, 1999.[3]

---

**3.** In doing so, we reject the UST's argument that the retention should be approved only as of the date of the Second Supplement. The UST argues that, because the original Application contained provisions that would not be approved, E & Y was not eligible for retention as of that date thus failing the first prong of the *Arkansas* standard. We disagree. The

first prong of the *Arkansas* standard is not met if the professional is not eligible for retention at all, perhaps because it is not disinterested. Since we find that E & Y is eligible for retention, albeit under terms different from what it initially sought, we conclude that its retention can be "retroactive" to the date it first sought approval.

### D. *Improper Fee Sharing*

■ As noted, it became apparent only at the hearing that E & Y is not currently performing all of the services for which its retention application sought approval.[4] At the initial hearing on October 15, Mr. Miller testified that all the financial advisory services are now being performed by EYR. Mr. Miller testified that E & Y would act as subcontractor under the E & Y retention. In fact, he testified that he had seen a draft of such a subcontracting agreement.

At the continued hearing on October 28, however, after discussions with counsel for the Debtors,[5] Mr. Miller testified that EYR would file an application for retention. That application was only recently filed, on November 12, 1999.

■ EYR's action in filing a separate retention application is wise. It is clear that the requirement in section 327(a) that Court approval be obtained before the debtor employs any professional (including an accountant or financial advisor) mandates a separate application for approval of EYR.[6] Parties may not avoid the requirements of section 327(a) by entering into such "subcontracting" arrangements which E & Y originally contemplated with respect to the EYR personnel. Such a subcontracting arrangement, if approved would eviscerate the protections of section 327(a) and allow a third party (rather than the debtor or the Court) to determine who should render professional services for the estate.

Since EYR, and its personnel, cannot be employed by the Debtors without a separate application, there will not be any illegal fee sharing in this case. Notwithstanding any arrangement which E & Y may have with EYR, the Court will not approve any compensation to E & Y for any services rendered by EYR personnel between October 1 and the time EYR's application for retention is filed and approved by this Court.

### E. *Failure to Disclose*

The UST delineates numerous examples of E & Y's non-disclosure of relevant facts in this case, including: failure to disclose the formation of EYR, the transfer of E & Y personnel to EYR, and the contemplated subcontracting arrangement with EYR; failure to disclose a marketing relationship with Jay Alix & Associates; and failure to disclose various relationships with creditors and counsel for the Debtors.

■ With respect to the objections about failure to disclose relationships with various creditors and counsel for the Debtors, we find that those failures are not significant and do not otherwise bar the retention by the Debtors of E & Y. Specifically, E & Y is an international accounting firm which performs numerous services for a significant number of clients. The services performed for counsel for the Debtors and the various identified creditors, for example, are principally audit and tax work. These matters are clearly unrelated to the services to be performed for

---

**4.** The UST sought valiantly to obtain discovery from E & Y in connection with its retention application. This was thwarted consistently by E & Y which asserted on several occasions that if any discovery requests were served, it would withdraw its retention application. Ultimately, some discovery was obtained consensually. Given the facts which came to light at the hearing, the Court is naturally suspicious of E & Y's motives in refusing the UST's initial request for discovery.

**5.** This conversation took place despite the Court's express direction to the witness that

he was not to discuss his testimony with anyone between the first and the second hearing.

**6.** The requirements of section 327 are further elucidated by Rule 2014(b) which provides that only partners, members or associates of partnerships or corporations which are hired as attorneys or accountants for the debtor can perform services or be employed by the debtor without the necessity for a separate application. The implication is clear that an entity that is not a partner or associate of E & Y cannot be employed by the Debtors (through E & Y) except by separate application.

the Debtors or to the relationships between those parties and the Debtors. They do not, therefore, constitute a disqualifying relationship.

 The UST also complains about E & Y's failure to disclose a marketing relationship with Jay Alix. Jay Alix personnel currently act as management for the Debtors. We do not think that the relationship disqualifies E & Y. Apparently, the UST agrees since it had agreed to withdraw this objection based on the agreement by the Debtors to assure that no Jay Alix personnel will be involved in the review or approval of the fee applications of E & Y. We agree that that is an appropriate resolution of this objection.

 With respect to the failure to disclosure the formation and relationship with EYR, we agree with the UST that there has been lack of full disclosure on this point. Although Mr. Miller testified that he knew in September that E & Y had decided to form EYR and that EYR was formed and began rendering services for the Debtors by October 1, it was not until at least October 12, 1999, that this was disclosed. The disclosure was also less than forthright—it was contained in a footnote to E & Y's Statement in support of its retention application and suggested the subcontracting arrangement Mr. Miller described would be used. This is not the full and frank disclosure mandated by the Bankruptcy Code and Rules.

 However, rather than disqualify E & Y, whose services the Debtors assert are essential, we believe that the failure of disclosure (and the failure to file a prompt retention application) can be remedied by denying any compensation to E & Y or EYR for the services performed by EYR between October 1 and November 12, 1999, when EYR filed its retention application.[7] Denial of compensation is a typical remedy for failure to disclose. *See, e.g.,*

*Rome v. Braunstein,* 19 F.3d 54, 59 (1st Cir.1994) (failure to disclose may alone be reason to disallow compensation); *In re Cook,* 223 B.R. 782, 794 (10th Cir. BAP 1998) ("where there has been a clear failure to make timely disclosure of all facts material to a potential conflict of interest, counsel appointed pursuant to § 327 can claim no right to a lesser sanction than the bankruptcy court is authorized to impose pursuant to § 328(c)" namely, disallowance of all compensation); *In re Smitty's Truck Stop, Inc.,* 210 B.R. 844, 848 (10th Cir. BAP 1997) ("an attorney who fails to comply with the disclosure requirements of § 329 and Rule 2016(b) forfeits any right to receive compensation for services rendered on behalf of the debtor and may be ordered to return fees already received").

As the First Circuit noted in *Rome v. Braunstein:*

> Although the bankruptcy court has an affirmative duty to exercise vigilance in avoiding impermissible conflicts of interest on the part of court-appointed professionals, . . . normally the professional, especially counsel, possesses ready access to, if not full awareness of, the facts material to any existing or potential competing interest which might conflict with the interests court-appointed counsel must represent, or those which might generate an unacceptable appearance or risk of conflict.

> As with other prophylactic ethical rules constraining attorney conduct, sections 327(a) and 328(c) cannot achieve their purpose unless court-appointed counsel police themselves in the first instance. . . .

> Absent the spontaneous, timely and complete disclosure required by section 327(a) and Fed.R.Bankr.P. 2014(a), court-appointed counsel proceed *at their own risk. See, e.g., In re Roger J. Au & Son, Inc.,* 71 B.R. 238, 242 (Bankr. N.D.Ohio 1986) (failure to disclose facts

---

7. Of course, we do not at this time decide the merits of the EYR retention application or

any objections which may be filed to it.

material to potential conflict may provide *totally independent* ground for denial of fees, quite apart from the actual representation of competing interests).

19 F.3d at 59.

The UST also argues that, by advancing its own interests, E & Y has breached its fiduciary duty to the Debtors. Although the UST is correct that E & Y has a fiduciary duty to the Debtors, we do not believe that it need ignore all of its own self interests. Because the failure to disclose did not conceal a disqualifying conflict of interest, the result articulated above remedies the "breaches of fiduciary duty" asserted by the UST (*i.e.*, failure to disclose and efforts to negotiate a retention agreement favorable to it). We believe that no further sanction is required.

## V. *CONCLUSION*

For the foregoing reasons, we will approve the retention of E & Y by the Debtors as articulated in the Second Supplement to the Application, and as modified above, effective June 29, 1999.

An appropriate Order is attached.

### *ORDER*

**AND NOW,** this **19TH** day of **NOVEMBER, 1999,** upon consideration of the Application to Retain Ernst & Young, LLP as Financial Advisors to the Debtors, and the Objections of the United States Trustee and Equity Committee thereto, and after hearings held on October 15 and 28, 1999, and briefing by the parties, it is hereby

**ORDERED** that the Application is **GRANTED,** effective June 29, 1999, on the terms set forth in the Second Supplement filed September 14, 1999, and in our accompanying Opinion.