**In re KOMAG, INCORPORATED, f/a/k/a HMT Technology Corporation, a Delaware corporation, Debtor.**

**No. 01–54143–JRG.**

United States Bankruptcy Court, N.D. California.

Oct. 12, 2001.

James O. Johnston, Hennigan & Bennett, Los Angeles, CA, reorganization counsel for Debtor and Debtor in Possession.

Robert J. Rosenberg, Greg Josephson, Latham & Watkins, New York City, for Appellant Ernst & Young Corporate Finance LLC.

Thomas R. Kreller, Milbank, Tweed, Hadley & McCloy, Los Angeles, CA, for the Senior Lenders.

Lawrence Peitzman, David B. Shemano, Peitzman, Glassman & Weg, Los Angeles, CA, for the Official Committee of Unsecured Creditors.

Kevin M. Epstein, for United States Trustee.

## OPINION

JAMES R. GRUBE, Bankruptcy Judge.

## I. INTRODUCTION

On August 24, 2001, Komag, Incorporated ("Komag") filed an Application for Order Authorizing Retention of Ernst & Young Capital Advisors LLC as Special Restructuring and Financial Advisor for the Debtor and Debtor In Possession.[1] The proposed order submitted by the Debtor authorizes Ernst & Young Capital Advisors' LLC ("Ernst & Young") employment as the debtor's "restructuring and financial advisors, on substantially the terms and conditions set forth in the Application and Retention Agreement." The Retention Agreement or Letter of Understanding ("Agreement") includes provisions which attempt to limit jurisdiction, and the means of resolution, of any controversy or claim that may arise from Ernst & Young's employment. Specifically, the Agreement provides that:

1) Any claim or controversy with Ernst & Young arising out of the Agreement, or in any way related to it, must be brought in federal court;

2) The parties to the Agreement, and any and all successors and assigns, waive their right to a trial by jury in any proceeding that is commenced.

3) If the federal court does not have or retain jurisdiction over the claim or controversy, it must first be submitted to non-binding mediation and, if not resolved, then to binding arbitration. There is no right to a trial of any type in a state court.

Finally, the Agreement attempts to bind any future trustee appointed in the case.

The United States Trustee filed an objection to the appointment of Ernst & Young based on these provisions.

## II. BACKGROUND

The provisions sought by Ernst & Young appear to be an effort to limit the company's potential exposure for malpractice claims. This effort may have resulted from a $185 million settlement in a case brought by a Chapter 7 Trustee against Ernst & Young in Maryland several years ago. *See In re Merry-Go-Round Enterprises, Inc.,* 244 B.R. 327 (Bankr.D.Md. 2000).

Merry Go Round Enterprises ("MGRE") filed a Chapter 11 petition in 1994 and the bankruptcy court approved the debtor's application to hire Ernst & Young as its turnaround specialist. In its application, MGRE stated that Ernst & Young would (i) prepare financial information for MGRE, (ii) assist in developing a plan of reorganization, (iii) assist in negotiating approval of a plan, (iv) render expert testimony as to the feasibility of a proposed plan, and (v) assist with other matters as requested by MGRE. Subsequently, MGRE's reorganization effort failed and the Court appointed a Chapter 7 Trustee.

After some investigation, the Trustee filed a fraud and malpractice action against Ernst & Young in the Circuit Court for Baltimore City. Ernst & Young removed the action to the bankruptcy court and the Trustee moved for remand. The Court granted the remand motion. *In re Merry-Go-Round Enterprises, Inc.,* 222 B.R. 254 (D.Md.1998). Ernst & Young made a last minute attempt to postpone the trial.

---

1. Due to an internal reorganization within Ernst & Young, the entity now the subject of the application is Ernst & Young Corporate Finance LLC. The change in the particular Ernst & Young entity involved does not effect the questions raised as the proposed retention is on the exactly the same terms and conditions as originally proposed.

When that failed the company agreed to a $185 million settlement on the eve of trial.

Since that time Ernst & Young has explored various ways to limit its exposure. It sought to include indemnification provisions in its agreements that would require a debtor to indemnity Ernst & Young for any claims brought against it, presumably including claims for fraud and willful misconduct. There is no indication that this provision has ever been judicially approved. *In re United Companies Financial Corporation*, 241 B.R. 521 (Bankr. D.Del.1999). Ernst & Young has also sought to avoid any type of trial by requiring binding arbitration of all claims, to prohibit the "assessment of consequential, incidental, indirect, punitive or special damages" and finally to limit damages by capping damages at the amount of fees charged. These efforts appear to have been similarly unsuccessful. *Id.* This brings one to the more limited prophylactic provisions that are now before the Court.

## III. DISCUSSION

The United States Trustee does not object to the retention of Ernst & Young. Rather, its objection is limited to the "forum shopping, jury trial waiver, and binding arbitration provisions" that are included in the Agreement. The U.S. Trustee argues that the provisions were not put in the Agreement to benefit the estate and its creditors but simply to insulate Ernst & Young's malpractice exposure to the extent possible.[2] Simply put, the U.S. Trustee

argues that other professionals do not receive such protections and there is no basis to give Ernst & Young "special treatment."

The rights that Komag has agreed to waive are substantial. The right to trial by jury is viewed as being so fundamental to our system of jurisprudence that it is part of the Bill of Rights, the Seventh Amendment to the United States Constitution. Binding arbitration not only eliminates a trial by jury but any trial at all. The venue provisions, while not as obviously detrimental, certainly limit the right of a potential plaintiff to choose its forum from those legally available.

Ernst & Young's response to the Trustee's objection raises two points. First, Ernst & Young argues that the provisions should be approved because they have been approved in various other bankruptcy courts. That argument, standing alone, is simply not persuasive. The only reported decision on the subject appears to be *United Companies Financial Corporation*[3] *supra*. That Court seemed relieved that Ernst & Young had deleted the "draconian" provisions it had previously promoted and was persuaded that the alternative dispute resolution provisions were appropriate and "laudable in relieving the court system of some of its burden."

In its response, Ernst & Young ignores the impact of the waiver of a jury trial and the limitation of jurisdiction to the federal court. Rather, it focuses on the desirability of alternative dispute resolution. Ernst & Young argues that federal policy en-

---

2. These provisions are certainly not included because Ernst & Young is concerned about the thoroughness or quality of its work. Ernst & Young received $441,211.91 from Komag in the 90 days preceding the filing and is providing Komag with a team of professionals billing as high as $650 per hour.

3. With respect to other courts that have approved some form of the provisions, there is no indication of whether objections were raised and argued or whether the provisions even came to the court's attention. Such provisions are usually not highlighted. In this case, for example, the subject provisions are found on the third page of Exhibit B to the application.

courages the use of ADR procedures and attaches as exhibits to its response the Justice Department's Voluntary Civil Dispute Resolution Policy and a memorandum from then Attorney General Janet Reno, Promoting The Broader Appropriate Use Of Alternate Dispute Resolution Techniques. Certainly, most judges and attorneys agree that ADR is a tremendously helpful tool. ADR proceedings may provide a better result for the parties as mediation often provides a greater array of possible solutions than the underlying court proceeding. Not all, however, agree that ADR should mandatorily replace a plaintiff's right to trial by jury.

An argument can be made that Komag should have negotiated these provisions out of the Agreement. As the Trustee pointed out, the provisions are not for the benefit of the estate and its creditors. However, the playing field is not always level. A Chapter 11 debtor with 8,000 creditors is not usually in a strong bargaining position. Nevertheless, Komag appears to have a sophisticated management team and competent legal representation. A reasonable argument can be made that Komag's agreement should be honored as to Komag.

That the Court could honor Komag's agreement as to itself does not decide the question. The issue for Komag is the survival of its business. In the event something should go terribly wrong in its reorganization effort, Komag's executives and counsel will likely be gone and the pursuit of remedies will be left to others. That was the situation in *Merry-Go-Round* and in almost all reorganizations that fail.

The real problem is with Ernst & Young's attempt to bind all "successors and assigns," most notably any trustee that might be appointed. Ernst & Young contends that a trustee and others will be bound by the agreement. There is author-

ity to support this proposition. *Armstrong v. Norwest Bank, Minneapolis, N.A.*, 964 F.2d 797, 801 (8th Cir.1992); *In re Southland Supply, Inc.*, 657 F.2d 1076, 1080 (9th Cir.1981); *In re Tandem Group, Inc.*, 61 B.R. 738, 742 (Bankr.C.D.Cal.1986).

The Agreement provides: "The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made." The waiver is certainly not informed and freely given by a trustee that has not yet been appointed or by Komag's 8,000 creditors. Their fundamental rights should not be eliminated in such cursory fashion. If the rights of unidentified parties in interest are to be waived without notice and their consent, that is a decision more properly made by Congress. Stated another way, if bankruptcy practice is to provide a greater insulation from malpractice claims than that which exists under state law, that should be a legislative not judicial determination. Finally, if Ernst & Young is entitled to the requested protections, is it not axiomatic that all other bankruptcy professionals should be similarly protected?

There is an additional provision of the agreement that causes concern to the Court. Ernst & Young is engaged to, among other things, prepare financial information for creditors and other stakeholders and to meet with and present information to parties such as Komag's senior lenders. Komag states that it intends to use Ernst & Young's liquidation analysis in its disclosure statement. Despite the anticipated use of Ernst & Young's work product, the Agreement states that it is performed for Komag "and should not be relied upon by any other party for any purpose." On what basis can Komag provide Ernst & Young's work product to creditors with-

out telling them they should not rely on it?

Ernst & Young attempts to justify the provision by saying that it is using information from Komag without independent verification and relying on that information. If the disclaimer were tailored to address this concern, it would not be a problem. Ernst & Young next argues that it should have protection similar to that provided by § 1125(e) of the Bankruptcy Code, which provides a safe haven for those who solicit votes on a plan in good faith based on an approved disclosure statement. Again, similar protection for Ernst & Young would not be a problem. However, the broad wording of the present provision seems designed to limit the standing of those who might have reason to question Ernst & Young's work in the future.

## IV. CONCLUSION

Based on the foregoing, the application must be denied in its present form.

This ruling was initially issued as a Tentative Ruling prior to a continued hearing on the Ernst & Young retention application. At the hearing Ernst & Young declined to offer any modification to the Agreement and, on the basis of the tentative ruling, asked that the application be withdrawn.