**In re C & C DEMO, INC., Debtor.**

No. 01–10298.

United States Bankruptcy Court,
E.D. Texas,
Beaumont Division.

Nov. 29, 2001.

Lisa L. Lambert, Trial Attorney, Office of United States Trustee, Tyler, TX, for movant.

Frank J. Maida, Maida Law Firm, P.C., Beaumont, TX, for respondent.

### *MEMORANDUM OF DECISION*

BILL PARKER, Bankruptcy Judge.

This matter came before the Court upon hearing of the Motion For Reconsideration of Order Approving Employment of the Maida Law Firm P.C. And For Order To Show Cause Why Counsel Should Not Be Sanctioned filed by the Office of the United States Trustee through which the United States Trustee seeks the disqualification of the Maida Law Firm, P.C. (the "Debtor's counsel") as the approved counsel for the Debtor–in–Possession, C & C Demo, Inc., and the disgorgement of all fees previously paid to or held as a retainer by the Debtor's counsel. At the conclusion of the hearing, the Court issued some preliminary findings, but took the matter under advisement in order to make a comprehensive review of the evidence presented at the hearing. This memorandum of decision disposes of all issues pending before the Court.[1]

### *Factual Background*

On February 14, 2001, C & C Demo, Inc. (the "Debtor–in–Possession"), filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Maida Law Firm, P.C. subsequently filed an application to be employed as the attorneys for the Debtor–in–Possession pursuant to § 327 of the Bankruptcy Code. The application contained the information required under the provisions of Fed. R. Bankr.P.2014(a), including a sworn "Affidavit of Disinterestedness" executed by Frank J. Maida which stated, in relevant part, as follows:

> 3. The firm has no connection with C & C DEMO INC., debtor, its creditors, or any other party in interest or their perspective (sic) attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee, except that the firm represents the debtor in this proceeding.
> 4. The firm neither holds nor represents any interest adverse to C & C DEMO INC., debtor-in-possession, or its estate in the matters upon which it is to be engaged.[2]

The Application and the accompanying affidavit, however, failed to disclose the fact that, on the same date upon which the Chapter 11 case was filed for the debtor corporation, the Maida Law Firm, P.C. also filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on behalf of the sole equity security holders of the Debtor–in–Possession, Robert Earl Covington and Tami Renia Covington (the "Equity Security Holders").

Thus, throughout the pendency of this Chapter 11 case, the Debtor's counsel has continually represented the interests of the Equity Security Holders in their Chapter 13 case. This dual representation has covertly proceeded for a number of months,

---

**1.** This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (B), and (O).

**2.** *See* Trustee's Exhibit P–4.

notwithstanding the unsurprising fact that liabilities exist for which both the Debtor–in–Possession and the Equity Security Holders are liable. The dual representation was uncovered only when the quarterly fees due and owing to the United States Trustee by the Debtor–in–Possession became delinquent because they were accidentally forwarded to the Chapter 13 trustee. The Debtor–in–Possession subsequently disclosed the dual representation as well in its original Disclosure Statement filed in conjunction with its proposed plan of reorganization.

Though Mr. Maida now admits the fallacious nature of the affidavit of disinterestedness which he submitted with the employment application of his firm, he now asserts that, in light of the fact that we are dealing with a "mom-and-pop" corporation, such nondisclosure should be excused without repercussions because: (1) the added expense of additional counsel is unnecessary since there is no actual conflict between the two bankruptcy estates and (2) the Chapter 11 case has now progressed to the point under which a substitution of counsel would cause more damage to the Chapter 11 reorganization effort than the damage caused by the lack of disclosure.[3]

### *Discussion*

■ The employment of attorneys by a Chapter 11 debtor-in-possession is governed by 11 U.S.C. § 327(a) and Fᴇᴅ. R. Bᴀɴᴋʀ.P. 2014(a). § 327(a) provides, in relevant part, that

... the trustee,[4] with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Section 327(a) thus invokes a two-prong test to determine whether a particular professional is qualified to act on behalf of a bankruptcy estate: (1) that professional must not hold nor represent any interest which is adverse to the estate; and (2) that professional must be a "disinterested person."

■ The Bankruptcy Code does not define "an interest adverse to the estate." However, substantial jurisprudence has developed the standard that a professional holds an adverse interest if he or she either (1) possesses or asserts any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute with the estate as a rival claimant, or (2) possesses a predisposition of bias against the estate. *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr.S.D.N.Y. 1998).[5]

■ The term "disinterested person" is defined in § 101(14) of the Bankruptcy Code[6] and courts construing that defini-

---

**3.** It is uncontested that, notwithstanding the dual representation of the Debtor–in–Possession and the Equity Security Holders, the services rendered by the Debtor's counsel in the Chapter 11 case have been performed in a diligent and competent manner.

**4.** A debtor-in-possession in a chapter 11 case is, of course, authorized to exercise most of a trustee's functions and duties, including those existing under § 365 of the Code. *See* 11 U.S.C. § 1107(a).

**5.** To "represent," as opposed to holding, an adverse interest "means to serve as agent or attorney for any individual or entity holding such an adverse interest." *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1016–17 (Bankr. N.D.Ill.1993).

**6.** In the categories relevant to this case, 11 U.S.C. § 101(14) defines a "disinterested person" as a person that—

**506**

tion have generally sought to determine whether a proposed professional has "either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one." *In re Martin,* 817 F.2d 175, 180–81 (1st Cir.1987). A disinterested person, therefore, "should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters." *Id.* at 181. The latter portion of that definition, which is commonly referred to as the "catch-all clause," is sufficiently broad to include any professional "who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code." *In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1256 (5th Cir.1986).

These standards exist for the protection of the bankruptcy estate and its creditors and are enforced through the mandatory disclosure procedures outlined in FED. R. BANKR.P. 2014(a) which states, in pertinent part:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee.... The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's

knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. *The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with* the debtor, creditors, *any other party in interest,* their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

FED. R. BANKR.P. 2014(a) [emphasis added].

■ These requirements "serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities," *Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994), and they "permit the Court and parties in interest to determine whether the connection disqualifies the applicant from the employment sought, or whether further inquiry should be made before deciding whether to approve the employment." *See Winship v. Cook (In re Cook),* 223 B.R. 782, 793 (10th Cir. BAP 1998), *citing In re Lee,* 94 B.R. 172, 176 (Bankr. C.D.Cal.1988).

■ Thus, any professional who seeks to be employed by a bankruptcy estate assumes an affirmative duty to disclose all connections with parties in interest, and to reveal any interest which may be antagonistic or opposite to the interest of the estate. Such duty continues to exist

> (A) is not a creditor, an equity security holder, or an insider; ...
>
> * * *
>
> (E) does not have an interest materially adverse to the interest of the estate or of any

> class of creditors or equity security holders ... for ... any reason.

throughout the pendency of the employment. As concisely stated in one opinion,

The professional must disclose all facts that bear on its disinterestedness and cannot usurp the court's function by choosing, *ipse dixit*, which connections impact disinterestedness and which do not. The existence of an arguable conflict must be disclosed if only to be explained away.... The professional's duty to disclose is self-policing. The court relies primarily on forthright disclosure to determine qualification under section 327. It should not have to rummage through files or conduct independent fact-finding investigations to determine if the professional is disqualified. Further, mere "boilerplate" disclosure may cover an inadvertent failure to disclose an insignificant connection, but does not suffice for known connections with parties presenting a significant risk of adversity.... Rule 2014(a) does not expressly require supplemental or continuing disclosure. Nevertheless, section 327(a) implies a duty of continuing disclosure, and requires professionals to reveal connections that arise after their retention. Continuing disclosure is necessary to preserve the integrity of the bankruptcy system by ensuring that the trustee's professionals remain conflict free.

*In re Granite Partners, L.P.*, 219 B.R. at 35 (citations and quotations omitted). See also, *Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 881–82 (9th Cir.1995) [finding that the disclosure requirements of Rule 2014 are strictly applied]; *In re Filene's Basement, Inc.*, 239 B.R. 845, 849 (Bankr.D.Mass.1999) ["Failure to be forthcoming with disclosure provides the bankruptcy court with an independent ground for disqualification."]; *In re EWC, Inc.*, 138 B.R. 276, 281–82 (Bankr.W.D.Okla. 1992) ["The duty of professionals is to disclose all connections with the debtor, debtor-in-possession, insiders, creditors, and parties in interest.... They cannot pick and choose which connections are irrelevant or trivial.... No matter how old the connection, no matter how trivial it appears, the professional seeking employment must disclose it."]. Thus, the scope of disclosure required under Rule 2014 is much broader than the issue of conflicts and disqualification, *In re Olsen Indus., Inc.*, 222 B.R. 49, 60 (Bankr.D.Del.1997) ["A court may find a disclosure violation without holding that it would have found the law firm not disinterested given timely and complete disclosure."].

 There is no doubt that each of the Equity Security Holders, as owners and sole shareholders of the debtor corporation, constituted a "party in interest" with respect to the Chapter 11 bankruptcy estate. Debtor's counsel admitted such at the hearing. Thus, those connections should clearly have been disclosed from the outset of this case and, because they were not, Mr. Maida failed to fulfill his duty to provide a full disclosure as mandated by Rule 2014. The timing of this inquiry is irrelevant to this determination. Any lack of intent by the Debtor's counsel to hide its dual representation is equally irrelevant. It matters not that the Equity Security Holders approved of the dual employment nor that they are currently pleased with the quality of work rendered by Debtor's counsel. The degree to which the Chapter 11 case has progressed in its reorganization efforts offers no safe harbor to the Debtor's counsel in this instance, nor may he benefit from the fact that a change of counsel at this point could cause a hardship to those efforts for, if such hardships indeed exist, he alone imposed them upon the debtor. Finally, this Court need not speculate as to whether it would have ultimately approved the retention of

Debtor's counsel in this instance despite the dual representation, assuming that such representation had been properly disclosed, because the disclosure omission by the Debtor's counsel precluded the Court from independently making that determination.[7]

■■■ Because the duty to disclose under Rule 2014 in a timely and complete fashion is placed solely upon the professional proposed to be employed under § 327, the Trustee's motion must be granted and the authorization of employment of the Debtor's counsel in this case must be retroactively rescinded. No feasible alternative exists if abuse of this self-policing system is to be deterred. It is simply imperative that every doubt which might arise in the mind of a debtor's attorney in this area is construed in favor of disclosure, and every attorney seeking employment under § 327 must exercise dedicated diligence in disclosing and, if necessary, supplementing a prior disclosure, regarding any "connections" which he may have with the debtor, creditors, or other parties in interest or risk the consequences of any failure in that regard. *See Rome,* 19 F.3d at 59 ["Absent the spontaneous, timely, and complete disclosure required by § 327(a) and FED. R. BANKR.P. 2014, court-approved counsel proceed at their own risk."].

■■■ The honest and comprehensive compliance by a proposed professional with these disclosure regulations plays such a vital role in maintaining the integrity of the bankruptcy system that a bankruptcy court is compelled to enforce them in an aggressive manner. Bankruptcy jurisprudence is replete with references to the power, authority and duty of the bankruptcy court to police the disclosure requirements of the Bankruptcy Code and Rules with its sanction powers, including the option to order the disgorgement of all sums received by counsel and the forfeiture of all compensation paid to counsel in a particular case, regardless of whether the undisclosed connections were materially adverse or only of a *de minimis* nature. *See, e.g., Kravit, Gass & Weber, S.C. v. Michel (In re Crivello),* 134 F.3d 831, 836 (7th Cir.1998)["[C]ounsel who fail to disclose timely and completely their connections proceed at their own risk because failure to disclose is sufficient grounds to revoke an employment order and deny compensation."]; *In re Smitty's Truck Stop, Inc.,* 210 B.R. 844, 850 (10th Cir. BAP 1997) ["Failure to disclose connections that have the potential for creating a conflict warrants a denial of all compensation to debtor's counsel."]; *In re Maui 14K, Ltd.,* 133 B.R. 657, 660 (Bankr. D.Haw.1991) [finding that even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees]. However, the Court must note that a violation of the disclosure requirements is not the equivalent of a violation of the disinterestedness standards, *In re EWC, Inc.,* 138 B.R. at 281, and, accordingly, most courts have reject-

---

7. Although *In re Huddleston,* 120 B.R. 399 (Bankr.E.D.Tex.1990) stands in this district for the proposition that it is possible under appropriate circumstances for an attorney to be employed under § 327(a) for the bankruptcy estate of a debtor corporation and the bankruptcy estate of its sole shareholder, that ruling, consistent with the authorities expressed throughout this opinion, is expressly premised upon a "candid and complete disclosure" by the attorney of all facts pertinent to eligibility in order to allow the Court to determine whether any connections disqualify the applicant from the employment sought. Judge Sharp specifically concluded that such a decision cannot be left to the professional seeking employment because the applicant's "judgment may be clouded by the benefits of the potential employment." *Id.* at 401.

ed a *per se* rule mandating the denial of all compensation for a violation of the disclosure requirements in favor of a rule which permits a court to exercise its discretion to impose an appropriate penalty under the particular circumstances presented. See *In re Gulf Coast Orthopedic Center,* 265 B.R. 318, 325 (Bankr.M.D.Fla.2001) and cases cited therein. In any event, appropriate notice and opportunity for hearing must be given to any party who may be subjected to the imposition of sanctions. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 56–57, 111 S.Ct. 2123, 2139, 115 L.Ed.2d 27 (1991); *Saldana v. Kmart Corp.,* 260 F.3d 228, 236 (3d Cir.2001); *Navellier v. Sletten,* 262 F.3d 923, 943 (9th Cir.2001); *Baulch v. Johns,* 70 F.3d 813, 817 (5th Cir.1995).

Thus, the Court concludes that the motion brought by the United States Trustee to reconsider the order approving the appointment of the Maida Law Firm, P.C. as primary bankruptcy counsel for the bankruptcy estate in this case must be granted, that the "Order Approving the Employment of the Maida Law Firm, P.C. as Primary Bankruptcy Counsel for the Estate," previously entered in this cause on March 29, 2001, must be vacated and that, as a result of its failure to comply with Fed. R. Bankr.P.2014, the Maida Law Firm, P.C. should be disqualified from any further representation of the Debtor in Possession, C & C Demo, Inc., in this Chapter 11 proceeding. The Debtor–in–Possession, as counseled at the hearing, should proceed immediately to retain new counsel to represent the Chapter 11 estate in this case.

Further, because of the violation of the disclosure requirements imposed upon the Maida Law Firm and its attorneys under Fed. R. Bankr.P. 2014, the Court will conduct a hearing on Tuesday, January 29, 2002 at 10:30 a.m. in the Courtroom of the United States Bankruptcy Court, in Beaumont, Texas, for the Maida Law Firm, P.C. and/or Frank J. Maida to show cause as to why disgorgement, a denial of all compensation, and/or other appropriate sanctions should not also be imposed. If any party in interest desires to file a written memorandum of argument and authorities regarding the imposition and appropriateness of sanctions in this case, such written memorandum must be filed on or before Friday, January 18, 2002, with any response thereto to be filed on or before Friday, January 25, 2002.

Finally, if any final fee award is to be sought by the Maida Law Firm, P.C. in this case, a formal final fee application must be filed and served by the Maida Law Firm, P.C. on or before December 21, 2001, with notice to be given in such application that any objections to that final fee application must be filed with the Court on or before January 11, 2002 and that a hearing to determine whether compensation shall be awarded will be conducted on Tuesday, January 29, 2002 at 10:30 a.m. in the Courtroom of the United States Bankruptcy Court, in Beaumont, Texas.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[8] pursuant to Fed.R.Civ.P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr.P. 7052 and 9014. Appropriate orders will be entered which are consistent with this opinion.

---

**8.** To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.