**In re Thomas N. TOMCZAK and Mary A. Tomczak, Debtors.**

**No. 97–26543–JES.**

United States Bankruptcy Court, E.D. Wisconsin.

July 16, 2002.

Janel M. Gieringer, Milwaukee, WI, for Debtors.

Andrew N. Herbach, Milwaukee, WI, trustee.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

This court has the task of determining if Hostak, Henzl & Bichler, S.C. ("HH & B"),[1] court-appointed attorneys for the chapter 7 trustee, should be awarded or denied, in full or in part, its requested compensation and reimbursement of expenses from this bankruptcy estate. HH & B has filed a post-petition administrative claim for services performed for the bankruptcy trustee in the amount of $2,315.61 and for reimbursement of expenses in the amount of $10,368.77. HH & B is also the major pre-petition creditor and filed a

---

1. Unless otherwise specified, all references in this decision to HH & B shall also apply to Robert H. Bichler (a shareholder of HH & B and the attorney who performed all of the legal services for the debtors and for the bankruptcy trustee) and vice versa.

proof of claim for pre-petition services and expenses in the total sum of $109,488.28 (comprising more than 90% of all proofs of claims on file).

Andrew N. Herbach, successor chapter 7 trustee, and the U.S. Trustee oppose payment of any fees or expenses from the estate in connection with both HH & B's pre-petition and post-petition claims.

## FACTUAL BACKGROUND

On July 3, 1997, Thomas and Mary Tomczak, the above-named debtors, filed a joint petition in bankruptcy under chapter 7. Michael F. Dubis was initially appointed chapter 7 trustee in this case. Due to a conflict of interest, he was replaced by John L. Castellani on July 16, 1997. On October 1, 1997, upon Castellani's application, the court signed an order appointing HH & B as attorneys for the trustee under 11 U.S.C. § 327(e). HH & B was appointed for the specific purpose of representing Castellani as trustee in two pending lawsuits which had been commenced in state court by HH & B pre-petition on behalf of the debtors.

HH & B was retained by the trustee on the basis of a contingency fee of 50% of net recovery after disbursements. Pursuant to Bankruptcy Rule 2014, HH & B filed a verified statement in which it disclosed its pending claim for pre-petition services and disbursements on behalf of the debtors totalling $109,488.28. Paragraph 7 of HH & B's verified statement under Bankruptcy Rule 2014 recites:

> HH & B is a creditor of the estate, and therefore, is an interested party in the bankruptcy proceeding.

Paragraph 10 of this same verified statement further declares:

> HH & B does not represent or hold any interest adverse to the debtors with respect to the matters on which HH & B

is requesting to continue as counsel for the trustee estate.

The two pending lawsuits for which HH & B was retained to represent the trustee stem from a boundary dispute in connection with the location of the debtors' home. The debtors first became aware of this problem in June of 1994 when a neighbor sold her premises to Mr. and Mrs. Charles Andersen ("Andersens"). While the sale was pending, the debtors were told by Mel Wendt, a realtor involved in the sale of the real estate to the Andersens, that the debtors' home encroached upon the neighbor's land being sold to the Andersens. Previously, the debtors obtained two surveys: first, when they purchased their lot, and second, when their home was being built. Neither survey revealed any encroachment. The Andersens closed the sale of the real estate despite this pending boundary dispute. Later, in October of 1994, the Andersens sued the debtors to enjoin them from using their property, for the removal of a portion of the debtors' home, and for recovery of damages ("Andersen suit"). In May, 1995, while this suit was pending, the debtors (then represented by HH & B) filed a separate lawsuit against the following parties in connection with this boundary dispute ("Surveyors suit"):

1. Peter Bailey and American Surveying Company (for an alleged erroneous survey provided to the debtors when the debtors purchased the land) and

2. Randolph L. Rafalski and Interline Surveying Services Inc. (for an alleged erroneous survey provided to the debtors when the debtors' home was being built), and

3. Mildred B. Wohlfard, who sold the land to the debtors. Ms. Wohlfard impleaded in this suit Equitable/Stefaniak Realty, who represented Ms.

Wohlfard in her sale of this land to the debtors.

In January of 1996, a compromise was reached in the Andersen suit. Under the terms of the settlement, the debtors agreed to pay $18,000 to the Andersens, and the Andersens, in turn, transferred to the debtors a portion of the premises sufficient to eliminate the debtors' home from encroaching upon the Andersens' property and from being in violation of local building and zoning ordinances.

In May of 1996, before the debtors filed for bankruptcy, a partial settlement was reached in the Surveyors suit. Wohlfard and Equitable/Stefaniak paid a total of $25,000 in exchange for releases against them. From this sum, $18,000 was in turn paid by the debtors to the Andersens as full payment in accordance with the settlement which the debtors made with the Andersens.

In January of 1997, the debtors brought another suit—this time against Attorney Michael F. Dubis, who represented them in this boundary dispute before they retained HH & B. Wisconsin Lawyers Mutual Insurance Company ("WLMIC"), Dubis' legal malpractice insurance carrier, was also joined as a defendant in this suit ("Dubis suit"). The debtors claimed in this suit that Dubis was negligent in failing to timely file a lawsuit against Bailey and American Surveying Company. The debtors' complaint alleged that while Dubis was investigating the boundary dispute, the statute of limitations ran against Bailey and American Surveying Company, which resulted in Bailey and American Surveying Company being dismissed from the Surveyors suit.

After this bankruptcy case was filed, this court approved a settlement of the Surveyors suit with the remaining defendants, Rafalski and Interline Surveying Services, Inc. Under the terms of that settlement, $15,000 was paid to the bankruptcy estate. That sum is now in a trustee bank account of Herbach, the successor trustee who, on October 15, 2000, replaced Castellani.

The Dubis suit eventually went to trial. A jury verdict was rendered on May 3, 1999, in which Dubis was absolved of any negligence. The jury found the debtors 35% negligent and Bichler 65% negligent. That verdict was upheld upon plaintiffs' motions after verdict to the trial court. The plaintiffs then attempted to overturn the trial court ruling on appeal—first, to the Wisconsin Court of Appeals, where the appeal was rejected and later, to the Wisconsin Supreme Court which denied plaintiffs' petition for review.

In opposing HH & B's applications for payment from this bankruptcy estate, Herbach and the U.S. Trustee contend that, as early as the latter part of January of 1997, Bichler was notified that he would be called as a material adverse witness by the defendants in the Dubis suit, thereby creating a conflict of interest. Attorney Robert E. Hankel, who represented the defendants in the Dubis suit, informed Bichler that he would be called to testify with respect to damages and with respect to liability on his part in connection with his handling of this boundary dispute on behalf of the debtors. Hankel also told Bichler that he was concerned whether Bichler could, under these circumstances, continue to serve as both attorney for the plaintiff and as a material witness. The defendants' amended answer dated October 13, 1998 alleged that: "Damages are due to acts of negligence and/or breach of contract of unnamed third parties over whom these answering defendants have no control." Paragraph 13 of this same pleading further stated that: "Intervening superseding causes relieve the defendants of any liability including, without limita-

tion, the negligence of a successor attorney" (referring to Bichler). The defendants' answer dated March 3, 1999 to the amended complaint in the Dubis suit again asserted that: "Intervening superseding causes relieve the defendants of any liability, including, without limitation, the negligence of a successor attorney."

Bichler acknowledged that before being appointed attorney for the trustee Castellani, he did not discuss with Castellani those concerns raised by Hankel. Bichler, however, denied that the concerns raised by Hankel resulted in any conflict of interest. Bichler testified that Castellani knew after HH & B's appointment as attorney for former trustee Castellani that Bichler would be called as an adverse witness. Bichler further testified that none of this was brought to the attention of the bankruptcy court or the U.S. Trustee.

## DISCUSSION

### Conflict of Interest—Duty of Full Disclosure

11 U.S.C. § 327 governs the employment by the trustee of a professional person. In this case, the employment of HH & B as counsel for the chapter 7 trustee falls under § 327(e)[2], which pertains to employment for a "specified special purpose."

Bankruptcy Rule 2014(a), which requires a verified statement by the pro-

fessional to be employed, implements § 327. It is intended to provide the court with information necessary to determine whether the professional's employment meets the broad tests of being in the best interest of the estate. A failure by the professional to disclose any facts which may influence the court's determination of employment of such professional may result in a later determination that the verified statement was inadequate, resulting in sanctions being imposed upon the professional. 9 *Collier on Bankruptcy* § 2014.03 (15th Ed. Rev.2002). In 1987, Bankruptcy Rule 2014(a) was amended to require the proposed professional to disclose all possible conflicts. 9 *Collier on Bankruptcy* § 2014.05 (15th Ed. Rev.2002). It is the professional's responsibility to make a full, candid, and complete disclosure. *In re Envirodyne Industries, Inc.,* 150 B.R. 1008, 1021 (Bankr.N.D.Ill.1993); *In re B.E.S. Concrete Products, Inc.,* 93 B.R. 228, 237 (Bankr.E.D.Cal.1988). The professional has an ethical duty to inform the court of any possible conflicts, no matter how trivial. *In re EWC Inc.,* 138 B.R. 276, 281 (Bankr.W.D.Okla.1992). The burden rests upon the professional completing the verified statement under Bankruptcy Rule 2014 to come forward with all facts pertinent to such applicant's eligibility to serve under 11 U.S.C. § 327. *B.E.S. Concrete Products, Inc.,* 93 B.R. at 236.

11 U.S.C. § 328(c)[3] reinforces 11 U.S.C. § 327 by authorizing the bankrupt-

---

2. 11 U.S.C. § 327(e) states:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

3. Section 328(c) of the Bankruptcy Code states in relevant part:

> Except as provided in § 327(c), 327(e) or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under § 327 ... if, any time during such professional person's employment under § 327, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the

cy court to deny compensation and reimbursement of expenses if, at any time during an attorney's appointment, there is a finding that such attorney holds an interest adverse to the interest of the estate with respect to such appointment.[4] When Bichler learned from Hankel that he would be called as an adverse witness with respect to damages and liability in the Dubis suit, he should have promptly disclosed such information to Castellani, the U.S. Trustee, and the court before HH & B was appointed as attorney for the trustee. He did not. The fact that Bichler may have thought this notification to him by Hankel was "trivial" or "meritless" is no excuse. *Envirodyne Industries,* 150 B.R. at 1021; and *EWC Inc.,* 138 B.R. at 281. Full disclosure is a continuing responsibility on the part of the professional employed by the trustee. If potential conflicts arise after the attorney has been appointed for the trustee, the attorney is under a duty to promptly notify the court. *In re Prudhomme,* 152 B.R. 91, 105 (Bankr.W.D.La. 1993).

■ Bichler disclosed the existence of HH & B's pre-petition claim in his verified statement, but did not provide the court with a full disclosure. There was no mention of the concerns raised by Hankel against Bichler, and that omission was fatal. Bichler never conveyed a full and candid disclosure of an actual or possible conflict, either in connection with his application for appointment or following his appointment as attorney for the trustee.

■ The ultimate determination of whether there is a disqualifying conflict and whether HH & B's continued representation of the trustee is in the best interests of the estate lies within the discretion of the court, not within the discretion of HH & B or Bichler. *B.E.S. Concrete Products, Inc.,* 93 B.R. at 236, declares:

> Defective disclosure is not a minor matter. It goes to the heart of the integrity of the bankruptcy system, of counsel, and of the courts.... Appearances count. Even conflicts more theoretical than real will be scrutinized.

■ Professionals are not permitted to "pick and choose" which disclosures are irrelevant or trivial. *In re C & C Demo, Inc.,* 273 B.R. 502, 507 (Bankr.E.D.Tex. 2001). Bichler, who during 1970 to 1986 first served as counsel for the Wisconsin Board of Bar Commissioners and subsequently for the Wisconsin Board of Attorneys Professional Responsibility, either knew or should have known of his duty to disclose this conflict of interest.

Wisconsin Supreme Court Rule 20:1.7(b) of the Rules of Professional Conduct for attorneys states:

> A lawyer shall not represent a client if the representation of that client may be materially limited ... by the lawyer's own interests, unless
>
> 1. the lawyer reasonably believes the representation will not be adversely affected and
>
> 2. the client consents in writing after consultation.

Wis. Sup.Ct. R. 20:1.7(b).

Even if Bichler believed that his representation of the trustee would not be adversely affected, it was not a reasonable belief on his part. Furthermore, Wis. Sup. Ct. R. 20:1.7(b)(2) required that Bichler,

---

matter on which such professional person is employed.

**4.** Section 327(e), unlike § 327(a), of the Bankruptcy Code does not require that the attorney

be a disinterested person. However, both §§ 327(a) and 327(e) require that such attorney not have an interest adverse to the bankruptcy estate.

prior to HH & B's appointment as attorney for the trustee, consult with the then trustee Castellani regarding this matter and obtain a written consent from him. Bichler failed to do so.

The court concludes that there was a conflict of interest on the part of HH & B, and there was a failure by Bichler to make a full disclosure of this conflict to the chapter 7 trustee, to the U.S. Trustee, and to the court.

### SANCTIONS

■ In order to guard against conflicts of interest, 11 U.S.C. § 328(c) authorizes the bankruptcy court to impose a penalty for the failure of the professional to disclose any conflicts of interest. A bankruptcy court should exercise its discretion in imposing penalties after weighing all of the equities involved. *In re Crivello,* 134 F.3d 831, 838 (7th Cir.1998).

Courts have taken different approaches on measuring sanctions for an attorney's failure to disclose a conflict of interest. There is authority for denial of all fees and reimbursement for expenses under these circumstances. *In re Chou–Chen Chemicals, Inc.,* 31 B.R. 842, 853 (Bankr.W.D.Ky. 1983); *ICM Notes, Ltd. v. Andrews & Kurth, L.L.P.,* 278 B.R. 117, 123 n. 13 (S.D.Tex.2002). Other courts have not only disallowed requests for fees and reimbursement for expenses but have also ordered disgorgement. *In re Angelika Films 57th Inc.,* 227 B.R. 29, 45 (Bankr. S.D.N.Y.1998); *In re EWC, Inc.,* 138 B.R. at 285; *In re Maui 14K, Ltd.,* 133 B.R. 657, 661 (Bankr.D.Haw.1991). Authority also exists for the court to disallow both post-petition and pre-petition claims of the attorney. *In re Occidental Financial Group, Inc.,* 40 F.3d 1059, 1063 (9th Cir. 1994).

■ This court adopts the flexible approach of balancing the needs for sanctions with the inequity which would otherwise result from a complete denial of all fees and disbursements. *In re Al Gelato Continental Desserts, Inc.,* 99 B.R. 404, 409 (Bankr.N.D.Ill.1989); *In re Roger J. Au & Son, Inc.,* 71 B.R. 238, 242 (Bankr. N.D.Ohio 1986); *In re Diamond Mortgage Corp. of Ill.,* 135 B.R. 78, 96 (Bankr. N.D.Ill.1990); *Rome v. Braunstein,* 19 F.3d 54, 62 (1st Cir.1994); *In re C & C Demo, Inc.,* 273 B.R. at 508–09 ("most courts have rejected a per se rule mandating the denial of all compensation for a violation of the disclosure requirements in favor of a rule which permits a court to exercise its discretion to impose an appropriate penalty under the particular circumstances presented").

■ The U.S. Trustee has recommended that if this court chooses to follow the flexible approach, it should disallow entirely the post-petition administrative claim of HH & B and allow $62,000 of its pre-petition claim for dividend purposes. The $62,000 portion of the pre-petition claim represents that portion of the requested fees and expenses devoted to the Andersen suit by HH & B, which was completed before Bichler was notified that he would be called as an adverse witness in the Dubis suit.

This court concludes that an appropriate sanction is the disallowance in full of HH & B's post-petition administrative claim (consisting of $2,315.61 for services and $10,368.77 for expenses) and the allowance of HH & B's pre-petition claim in the amount of $95,000. The $95,000 pre-petition claim represents that portion of HH & B's pre-petition fees and expenses incurred not only in the Andersen suit but also in the Surveyors suit up to late January, 1997, when Bichler was first informed that he would be called as an adverse witness in the Dubis suit.

In the final analysis, it makes very little difference whether HH & B's pre-petition claim is allowed at $95,000 or $62,000, due to the size of HH & B's pre-petition claim and the relatively small amount available as a dividend. The amount of dividend, by allowing HH & B's pre-petition claim at $95,000, will amount to only a few hundred dollars more than if HH & B's pre-petition claim would be allowed at $62,000.

The underlying rationale for imposing sanctions in this case is sound. A full disclosure enables the court, as well as the chapter 7 trustee and the U.S. Trustee, to make an informed judgment on whether such appointment of the professional is in the best interests of the estate. It also preserves the integrity of the judicial process and provides the only manner in which the court, the U.S. Trustee, and the chapter 7 trustee can fully scrutinize the professional's application.