**In the Matter of WEBB & KNAPP, INC. and Subsidiaries, Debtors.**

**No. 65 B 365.**

United States District Court, S. D. New York.

Aug. 23, 1973.

Marshall, Bratter, Greene, Allison & Tucker, New York City, for Trustees; Jerome L. Greene, Richard L. Veron, Donald H. Siskind, Arthur L. Kimmelfield, New York City, of counsel.

Marvin Jacob, Jerome Feller, Robert Alderman, New York City, for S. E. C.

Sullivan & Cromwell, New York City, for Marine Midland Trust Co. of N. Y.; James H. Carter, Jr., of counsel.

Royall, Koegel & Wells, New York City, for National Bankers Life Ins. Co.; Frank J. Franzino, Jr., New York City, of counsel.

ROBERT J. WARD, District Judge.

Pursuant to Section 241 of the Bankrupty Act, 11 U.S.C. § 641,[1] the trustee, Mortimer M. Caplin, and his counsel, Marshall, Bratter, Greene, Allison & Tucker, have applied for final allowances in this Chapter X proceeding. The trustee, in addition to $80,000 previously received as interim compensation, has requested a final allowance in the amount of $170,000 for services rendered since his appointment on May 18, 1965. He also has requested $1,104.25 as reimbursement of disbursements. Counsel for the trustee have received interim allowances of $460,000 for services rendered since their retention in May 1965. Their application is for a final allowance for services rendered in the amount of $1,110,000 in addition to the interim allowances. Counsel also have requested $17,886.72 as reimbursement of disbursements.

For the reasons discussed below, the trustee's application is granted in the amount of $150,000 and counsel's application is granted in the amount of $790,000 for services rendered to the estate. Both allowances are in addition to previous interim payments. The requests for reimbursement of disbursements are granted in full.

I. Webb & Knapp, Inc., a publicly owned corporation with approximately 40,000 stockholders, was engaged in the real estate business and for a time conducted one of the largest real estate operations in the world. By 1959 its gross assets were almost $300,000,000 from its activities in the United States and Canada.

Webb & Knapp last reported net income in 1961. It had expanded its operations into urban renewal, hotels, the amusement park field and shipping centers. However, none of these were financial successes. Rather, they resulted in huge deficits. For example, reported operating losses for 1962 and 1963 were $19,000,000 and $32,000,000, respectively.

An involuntary petition for reorganization under Chapter X of the Bankruptcy Act was filed on March 7, 1965, by Marine Midland Grace Trust Company. The debtor did not even have sufficient cash at this time to pay its ninety employees. Its balance sheet on May 17, 1965 showed $21,500,000 in assets and $60,000,000 in liabilities. In addition, approximately $84,000,000 in claims were outstanding.

---

1. The Section provides in pertinent part:

The judge may allow reimbursement for proper costs and expenses incurred by the petitioning creditors and reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred in a proceeding under this chapter—

. . . . .

(3) by the trustee and other officers, and the attorneys for any of them;

Although Webb & Knapp had interests in many properties throughout the United States at the time of the filing of the Chapter X petition, these properties were subject to liens in excess of equities, their mortgages were in default, and taxes were in arrears.

After over eight years of administration of this estate by the trustee and his counsel, the estate has accumulated $8,320,000 in cash receipts and expects an additional $735,000. The Securities and Exchange Commission ("the SEC") participated in the hearings on the applications for allowances and has submitted a most thorough and helpful memorandum summarizing the important aspects of the applicants' activities during this proceeding which have led to this improved position. In the Court's view, the most important of these activities were the following:

A. *Sale of Assets:* These sales were complicated by claims of mortgagees and other lien claimants. Many of the sales of real estate were possible only after settlements with secured creditors. One of the most favorable sales was the sale of the net lease on a large parcel of land in Washington, D. C., known as L'Enfant Plaza, an urban development project. This transaction required reinstating the lease on which the debtor was in default and the closing of a contract of sale. The debtor realized $1,550,000 from the sale.

B. *Claims Against Third Parties:* More than twenty actions were filed by the applicants, two of which were against former officers and directors; one for waste and mismanagement, and the other for usurpation of corporate opportunities. These were settled for approximately $900,000. Assertion of counterclaims against the National Development Corporation ("NDC") in a suit it brought for damages from defaults by Webb & Knapp, resulted in a settlement in which NDC paid the trustee $785,000.

C. *Settlement of Claims:* Claims against the estate have been reduced from $84,000,000 to approximately $19,880,000. As the SEC points out, the "major achievement" in this area was the settlement of Internal Revenue priority claims for taxes in excess of $35,000,000 for $2,750,000. The Court acknowledges the major efforts required to settle these claims without costly litigation and delay. Had it not been for these settlements there would have been no funds available for distribution to general unsecured creditors. As a result of these favorable settlements, a plan of liquidation was formulated and approved by the Court.

■ II. The legal principles which are to be employed in determining fair and reasonable compensation are clear. The success of reorganization is one factor to be considered in awarding fees. Nevertheless, the failure of reorganization and the unsuccessful outcome of litigation involving issues pursued by the trustee and counsel do not bar reasonable compensation for efforts expended. In re Engineers Public Service Co., 116 F.Supp. 930 (D.Del.1953), aff'd, 221 F. 2d 708 (3rd Cir. 1955).

■■ Of course, no compensation is awarded for services which were unnecessary or wasteful. In re Porto Rican American Tobacco Co., 117 F.2d 599, 601 (2d Cir. 1941). Applicants are required to submit accurate and current time records, and estimates made at the "eleventh hour" are discouraged. In re Hudson & Manhattan Railroad Co., 339 F.2d 114, 115 (2d Cir. 1964).

■ Compensation in reorganization proceedings does not usually equal that of other litigation because it comes directly from the debtor's estate which belongs to others who have not requested the services of the trustee and his counsel. Finn v. Childs Co., 181 F.2d 431, 435–436 (2d Cir. 1950). Thus, in determining fees, the Court must be fair to the applicants so that qualified trustees and counsel will not be discouraged from serving in these matters, but at the same time they must not be over-compensated to the detriment of creditors.

Massachusetts Mutual Life Insurance Co. v. Brock, 405 F.2d 429, 432–433 (5th Cir. 1968), cert. denied, 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220 (1969).

In In re Imperial "400" National, Inc., 432 F.2d 232, 237 (3rd Cir. 1970), the Court indicated that "economy of administration, the burden that the estate may safely be able to bear, the amount of time required, although not necessarily expended, and the overall value of the services to the estate" must be considered in determining fair and reasonable compensation.

■ Finally, duplication of services, large amounts of time without commensurate accomplishment and "routine [matters] uneconomically spread out over long periods of time" are frowned upon. In re Solar Manufacturing Corp., 215 F.2d 555, 560 (3rd Cir. 1954).

III. As already noted, counsel request $1,110,000 in addition to the $460,000 already paid in interim allowances, for a total final allowance of $1,570,000. Counsel have rendered services from May 20, 1965 through the date of this opinion. They recorded over 30,000 hours of time through October 1, 1972, but estimate that this encompasses only 90% of the time actually spent. Counsel urge that their actual time totals 33,684 hours, 8,629.1 of which were spent by partners and 25,054.9 by associates. Finally, counsel estimate a future expenditure of an additional 2,500 hours.

The SEC has recommended to the Court that in addition to the $460,000 already received, counsel should be awarded only $440,000. Because of the large disparity between the request and recommendation, the reasons for the SEC's recommendation will be closely examined.

■ Counsel assert that they have "created" a fund of over $9,000,000. The SEC, on the other hand, considers the trustee's and counsel's efforts as "transforming" real estate into cash. The SEC concedes that the real estate was heavily encumbered and compensable services were rendered in the trans-formation; nevertheless, the SEC argues that the efforts did not create an estate as in derivative suits where bare claims are asserted by counsel. The Court is constrained to agree with the SEC that the fund was not created, as in derivative or class actions. Thus, the amount of counsel fees must reflect this difference.

In addition, the SEC argues that counsel's request is disproportionate to the estate's resources; the SEC points out that this was not a "successful reorganization". The requested counsel fee is almost 17% of the total receipts, while unsecured creditors would receive only about 12.1% of these receipts. The latter is only about 5% of the principal amount of their claims. As already discussed, allowances must bear a reasonable relationship to the total receipts. Where, as here, unsecured creditors will receive only a fraction of their claims and the shareholders will not receive anything, it would be unreasonable to award inflated fees to counsel.

■ Counsel argue that the Court should take into account the rising costs of running a law office. The Court has taken this factor into consideration in fixing what it believes to be a fair and reasonable fee.

Another important reason for the SEC's recommendation was its conclusion that counsel's time records were "sketchy" and "incomplete", and that attorneys aggregated their daily time expenditures on one time slip. Also, the SEC opposes the addition of the 10% unrecorded time.

At the hearings on these applications, the Court also expressed some dissatisfaction with counsel's method of recording the time allotted to Webb & Knapp. Following this, counsel submitted affidavits to supplement their time records. The SEC also found these supplemental affidavits inadequate. Nevertheless, although the affiants appear to have relied somewhat on their personal recollections, and "approximations", the Court is satisfied that the supplemental affida-

vits in large measure filled the gaps in the original records. One supplemental affidavit detailed the total number of hours, allocating them among the various matters on which legal services were performed. To the extent of recovery, that was also shown in each major area. Thus, for example, the affidavit showed that counsel devoted 2,000 hours to the L'Enfant Plaza matter with six partners working on the matter.

The Court recognizes that the affidavits are approximations; however, in combination with the original time records, they are to be afforded more weight than the SEC suggests. The Court does agree, however, that the 10% unrecorded time may not be considered in determining the fee.

 Finally, the SEC has pointed out that in some other large and complex Chapter X proceedings counsel have recorded far fewer hours expended. The Court considers that comparisons with other proceedings are not very reliable indicia. Rather, the Court prefers to analyze the instant application in the light of the work performed, results achieved, and hours expended.

In view of all of the above considerations, the Court considers $790,000 in addition to the $460,000 already awarded, to be fair and reasonable compensation. In reaching this conclusion, the Court is mindful of the great weight to which the independent judgment of the SEC is entitled. *See, e. g.,* Ruskin v. Griffiths, 269 F.2d 827, 835 (2d Cir. 1959). Nevertheless, in the Court's view, in this case, fair and reasonable compensation lies between the SEC's suggestion and counsel's application.

80% of this fee and all of counsel's disbursements will be paid when the time to appeal from an order granting the application has expired. Payment of the balance of the fee will await the distribution to unsecured creditors.

IV. The trustee requests $170,000 in addition to $80,000 already paid. The trustee reports that from his appointment on May 18, 1965 through October 19, 1972, he has devoted 3,825 hours to the estate's affairs. He expects to expend at least 200 additional hours in winding up the estate. The trustee's time records appear to be in order and contain sufficient information and detail.

The trustee's responsibility in this proceeding is to operate the business and manage the property of the debtor. Taking into account all of the factors previously discussed, as well as the special difficulties which confront a trustee in such an enormous proceeding, the Court believes that $150,000 in addition to the $80,000 already received is fair and reasonable compensation. Eighty percent of this allowance and all of the trustee's disbursements will be paid after the time to appeal has expired, and the remainder of the allowance will be paid after the distribution to unsecured creditors.

Settle order on notice.