## In re METROPOLITAN ENVIRONMENTAL, INC., Debtor.

**No. 01–35756.**

United States Bankruptcy Court, N.D. Ohio.

March 6, 2003.

[redacted]

See also 293 B.R. 893, 2003 WL 21220121.

Anne M. Frayne, Dayton, OH, Michael
W. Bragg, Toledo, OH, for Debtor.

Diane W. French, Lima, OH, for Bruce
C. French, trustee.

Amy L. Good, Dean Wyman, Cleveland,
OH, for Ira Bodenstein, U.S. Trustee.

Amy L. Good, Cleveland, OH, for Saul
Eisen, U.S. Trustee.

Howard B. Hershman, Toledo, OH, for
Roy Bayer Testamentary Trust.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy
Judge.

Before the Court are three related matters: the "Second and Final Application of Anne M. Frayne and Michael W. Bragg, Counsel for the Debtor–in–Possession, for Allowance of Chapter 11 Compensation and Reimbursement of Expenses;" Center Capital Corporation's objection to the Second and Final Application for fees and expenses filed by Anne Frayne and Michael Bragg; and the Motion of the United States Trustee to, among other things, disgorge fees. On January 10, 2003, the Court held a final hearing on these contested matters at which time all of the parties with an interest in these matters were afforded the opportunity to be heard. In considering the arguments raised by the Parties, and after having had reviewed all of the evidence and materials presented in this case, the Court, for the reasons that will now be explained, finds that the proper circumstances exist in this case to require a partial disgorgement of fees.

## GENERAL BACKGROUND INFORMATION AND PROCEDURAL HISTORY

The Debtor in Possession, Metropolitan Environmental, Inc. (hereinafter "DIP"), was in the business of hauling hazardous

waste. On September 17, 2001, Anne Frayne of the law firm of Myers & Frayne Co., L.P.A., filed on behalf of the DIP, a voluntary petition in this Court for relief under Chapter 11 of the United States Bankruptcy Code. Immediately thereafter, Ms. Frayne, as is required by 11 U.S.C. § 327 and Bankruptcy Rule 2014, filed an application to employ herself and her law firm as legal counsel for the DIP. The application, as is required by 11 U.S.C. § 329, disclosed that Ms. Frayne and her law firm sought to be paid a retainer of $150,000.00 at the rate of $1,000.00 per day.

On September 24, 2001, the United States Trustee (hereinafter "UST") filed an Objection to the Application to employ Ms. Frayne and her law firm as legal counsel for the DIP. The grounds for the objection were fourfold: (1) Ms. Frayne and her law firm held prepetition claims against the DIP; (2) Ms. Frayne and her law firm had, on a prepetition basis, represented two of the DIP's directors; (3) on a prepetition basis, Ms. Frayne may have represented the DIP in connection with a note and a security agreement made between the DIP and its insiders; and (4) the proposed terms of the retainer disclosed in the application were unreasonable. Thereafter, on November 14, 2001, the Court, after holding a hearing on these matters, issued an Order permitting Ms. Frayne and her law firm to be employed as legal counsel for the DIP. This Order, however, based partially upon the UST's objections, was subject to these particular conditions: (1) Ms. Frayne and her law firm were required to waive any and all prepetition claims they had against the DIP; and (2) the initial retainer of Ms. Frayne could not exceed, without Court approval, $50,000.00. In this same Order, the Court also permitted Michael Bragg, whom had earlier filed an application for employment, to be retained as local counsel for the DIP.

On March 28, 2002, the DIP's Chapter 11 case was converted to Chapter 7. Following this event, both Ms. Frayne and Mr. Bragg were permitted, through an order entered by the Court on September 17, 2002, to withdraw as legal counsel. Prior to conversion, however, both Ms. Frayne and Mr. Bragg executed an agreement—which is at the center of the instant controversy—with certain insiders/creditors of the DIP to guarantee their fees. Upon discovery of this agreement, the UST, on May 21, 2002, filed a Motion in which it sought an Order from this Court to do three things: (1) vacate the retention order of Anne Frayne and Michael Bragg as legal counsel for the DIP; (2) direct Ms. Frayne and Mr. Bragg to provide an accounting of all fees paid in connection with their representation of the DIP; and (3) have Ms. Frayne and Mr. Bragg disgorge their fees. On July 10, 2002, a hearing was held on this matter. At the conclusion of the hearing, however, the Court, except for requiring an immediate accounting of fees, declined to rule on the matter until it received a final application from Ms. Frayne and Mr. Bragg for their respective fees and expenses.

In accordance therewith, a second and final application for fees and expenses was submitted to the Court on July 30, 2002. In this second application, Ms. Frayne requested fees of $59,753.78 and expenses of $17,626.93 for the period running from January 1, 2002, to the date of the conversion of this case to a Chapter 7 bankruptcy. For this same time period, Mr. Bragg requested fees of $21,924.00 and expenses of $1,486.94. In addition to these fees and expenses, this application also requested that the Court approve the first application for fees and expenses submitted by Ms. Frayne and Mr. Bragg which, for the peri-

od ending December 31, 2001, had requested fees and expenses in these respective amounts: (1) fees of $116,879.45 and expenses of $7,802.04 for Ms. Frayne; and (2) fees of $20,503.00 and expenses of $680.18 for Mr. Bragg. As it relates to the first fee application, the record of this case shows that it was filed on March 4, 2002, and that a subsequent hearing was held on April 18, 2002, at which time the Court held it would follow up on the matter in 45 days.

On September 6, 2002, the Court, for reasons of judicial economy, consolidated the second and final application for fees with the Motion by the UST to have Ms. Frayne and Mr. Bragg disgorge their fees. Shortly thereafter, the Court, as is required under Bankruptcy Rule 2002(a)(6), permitted any party in interest to raise any additional matters concerning the fees and expenses sought by Ms. Frayne and Mr. Bragg. In response, Center Capital Corporation, filed an objection to Ms. Frayne's and Mr. Bragg's second and final application for fees. At the hearing held on this matter, counsel for Center Capital argued that the amount of compensation sought by Ms. Frayne and Mr. Bragg was not commensurate with the results obtained in the DIP's Chapter 11 case, and therefore the compensation should be denied as excessive or, at the very least, reduced.

## FACTS

Pursuant to her first and second fee applications, Ms. Frayne seeks, as an allowed administrative expense, a total of $176,633.23 in fees and $25,428.97 in expenses (total, $202,062.20). In this same regard, Mr. Bragg seeks a total of $42,427.00 in fees and 2,167.12 in expenses (total, $44,594.20). Relevant to the allowance of these fees and expenses are the facts set forth below, which, in accordance with Bankruptcy Rules 7052 and 9014, shall constitute this Court's findings of fact:

On February 22, 2002, six insiders of the DIP, all of whom were represented by legal counsel, entered into an agreement (hereinafter the "Guaranty") to personally guarantee the legal fees and expenses of Ms. Frayne and Mr. Bragg. The insiders are: Bruce Swonger, Scott Swonger, Shawn Mir, B.J. Swonger and Mary Belle Swonger. Bruce Swonger, Scott Swonger and Shawn Mir are the directors/officers and the shareholders of the DIP. In addition, both Scott and Bruce Swonger are co-debtors for numerous obligations of the DIP. (DIP's Schedule D). B.J. Swonger and Mary Belle Swonger, who are the parents of Bruce and Scott Swonger, hold secured claims against the DIP; the amount of these claims are respectively $978,835.52 and $342,621.76 (Proof of Claim Nos. 98, 99, 100 & 101). Likewise, both Bruce and Scott Swonger also hold claims against the DIP. Specifically, Bruce Swonger holds a secured claim against the DIP for $394,817.29 and an unsecured claim against the DIP for $6,673.10. (Proof of Claim Nos. 102 & 216). Scott Swonger also holds an unsecured claim against the DIP in the amount of $4,376.92. (Proof of Claim No. 264).

The relevant language of the Guaranty executed by the above insiders provides that:

IN CONSIDERATION of Anne M. Frayne and her firm Myers & Frayne Co., L.P.A. and Michael W. Bragg and his firm Spengler Nathanson P.L.L. continuing to perform services for Metropolitan Environmental, Inc. In connection with its Current Chapter 11 case pending in the Northern District of Ohio, any conversion of that case to Chapter 7, or any dismissal relating thereto and related matters, the under-

signed (Guarantors) do hereby absolutely, irrevocably, and unconditionally guarantee the payment of all outstanding fees due the firms of Myers & Frayne Co., L.P.A. and Spengler Nathanson P.L.L. and any and all fees to be incurred for services rendered after the date hereof on behalf of Metropolitan Environmental, Inc or any of its affiliates or related matter.

The obligations of the undersigned Guarantors under this Guaranty shall be absolute and unconditional and shall remain in full force and effect until all legal fees due the firms of Myers & Frayne Co., L.L.P. and Spenger Nathanson P.L.L. by Metropolitan Environmental Inc. Or its affiliates, have been paid. Such obligations shall not be released, discharged, affected, modified, or impaired by reason of or the happening from time to time of any event, including without limitation, any of the following, whether or note with notice to or the consent of any of the Guarantors:

> (1) The compromise, settlement, release, discharge, or termination of any or all of the obligations of Metropolitan Environmental Inc. To Myers & Frayne Co., L.P.A. and/or Spengler Nathanson P.L.L., by operation of law or otherwise, except as may result in payment in full; ...

The Guaranty then goes on to state:

> ... neither Myers & Frayne Co., L.P.A. nor Spengler Nathanson P.L.L. will proceed to collect against any Guarantor until the earlier of (i) the sale of substantially all of the assets of Metropolitan, Inc., (ii) Metropolitan Environmental is no longer making a good faith diligent effort to sell substantially all of its assets, or (iii) the Guarantor(s) are no longer making a good faith diligent effort to sell substantially all of its assets.

Although signed on February 22, 2002, the Guaranty was not formally disclosed to the Court until June 12, 2002. However, presently neither Ms. Frayne nor Mr. Bragg have attempted to enforce the Guaranty because ostensibly none of the contingencies, as contained in the last paragraph of the above provisions, has occurred. According to Ms. Frayne and Mr. Bragg, the Guaranty was executed at a time when the continued operations of the DIP were no longer feasible, thereby necessitating the need for a liquidating plan of reorganization. (Doc. 546, ¶ 7). During the time period immediately preceding the execution of the Guaranty, two checks, which were subsequently returned on account of insufficient funds, were issued by the DIP to Ms. Frayne: a check dated February 8, 2002, in the amount of $1,000.00, and another check in the same amount dated February 11, 2002. (Doc. 569, Exhibit A).

During their representation of the DIP, Ms. Frayne and Mr. Bragg, both of whom are experienced bankruptcy practitioners, performed extensive services related to the reorganization of the DIP. Although these services ultimately proved unsuccessful, such services encompassed all aspects of the DIP's attempt to formulate a successful plan of reorganization under Chapter 11. Of the fees and expenses sought by Ms. Frayne for her work with the DIP, $44,096.17 are attributable to services performed after the Guaranty was executed. (Doc. 627, Exhibit A). In this same respect, the fees and expenses incurred by Mr. Bragg after the execution of the Guaranty totaled $8,067.98. (Doc. 569, Exhibit F).

As compensation for their services, the DIP made numerous remunerations to Ms. Frayne and Mr. Bragg for their legal fees and expenses. These payments commenced on November 11, 2001, and ended

on February 22, 2002,—the same date the Guaranty was executed—when the DIP issued two checks totaling $6,500.00. (Doc. 569, Exhibit B). As it relates to the DIP's payment of legal fees and expenses, the facts presented in this case show that Ms. Frayne initially deposited the funds into her Trust Account, which were thereafter distributed, on an interim basis, subject to final approval by this Court. In all, the payments made by the DIP totaled $61,440.50. (Doc 569, Exhibit B). Of this amount, $52,099.93 is allocable to Ms. Frayne's services, while $9,340.57 is allocable to Mr. Bragg's services. (Doc. 569, Exhibit D).

## DISCUSSION

The pleadings filed by Center Capital Corp. and the UST raise three issues concerning the first and second applications for fees and expenses filed by Ms. Frayne and Mr. Bragg. First, based upon the objection filed by Center Capital, to what extent, if any, should the fees and expenses sought by Ms. Frayne and Mr. Bragg in their second application be allowed? Second, pursuant to the UST's Motion, did the fee guaranty executed in favor of Ms. Frayne and Mr. Bragg disqualify them from representing the DIP? Finally, and also pursuant to the UST's Motion, what sanctions, if any, are appropriate for the failure of Ms. Frayne and Mr. Bragg to timely disclose their fee guaranty with the DIP's insiders? [1]

 The first issue raised by Center Capital's objection is governed by § 330(a) of the Bankruptcy Code. Under this section, a court is permitted to award compensation to professional persons, such as Ms. Frayne and Mr. Bragg, who are rightfully employed under 11 U.S.C. § 327.

The types of compensation permitted under § 330(a) are twofold: "(A) reasonable compensation for actual, necessary services rendered by the ... attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A)/(B).

In determining what is reasonable compensation under paragraph (A), § 330 directs that "the court shall consider the nature, the extent and the value of such services..." 11 U.S.C. § 330(a)(3). In conducting this analysis, a court is further directed to consider a nonexclusive list of factors, which includes, among other things, "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title[.]" 11 U.S.C. § 330(a)(3)(C). Conversely, § 330 also mandates that a court disallow compensation for services under any one of three conditions: (1) "unnecessary duplication of services;" (2) "services that were not reasonably likely to benefit the debtor's estate;" or (3) "services that were not necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A).

As it relates to the above considerations, Center Capital, at the hearing held on this matter, was unable to point to any specific examples as to why the fees of Ms. Frayne and Mr. Bragg were not reasonable. Notably, Center Capital did not identify any services that should not have been performed, or any time when further services devoted to the reorganization effort of the DIP became obviously futile. Instead, the thrust of Center Capital's argument is simply based upon the fact that substantial

---

1. Pursuant to the UST's Motion, the Court also ordered both Ms. Frayne and Mr. Bragg to provide a complete accounting of all fees and expenses. Both Ms. Frayne and Mr. Bragg have, in a timely manner, completely complied with this order.

fees are being sought from an estate that ultimately could not be successfully reorganized. In Center Capital's own words: "Here the amount of compensation being sought is not commensurate with the results in this case. The Debtor failed to obtain a confirmed Chapter 11 Plan of Reorganization, and the services did not benefit the estate." (Doc. 691, at pg. 2).

■ Nowhere in § 330, however, is it stated that as a condition precedent to a professional receiving compensation, there must exist a successful plan of reorganization. Rather, it is an established principle of bankruptcy law that a successful reorganization is but one factor to be considered in awarding fees. *In re Webb & Knapp, Inc.*, 363 F.Supp. 423, 426 (S.D.N.Y.1973); *In re Yale Express System, Inc.*, 366 F.Supp. 1376, 1381 (S.D.N.Y.1973). In this respect, the Court does agree that the fees of Ms. Frayne and Mr. Bragg do, from first appearances, appear to be quite substantial. This is especially true when one considers that besides not producing a confirmed plan of reorganization, the DIP's Chapter 11 case lasted barely six months.

■ Nevertheless, after considering the standard set forth in § 330, the Court does not believe that any downward adjustment in fees is required. In coming to this decision, the Court begins by noting that from the onset, this case involved many different facets which, in addition to requiring counsels' presence at numerous hearings, were surely very time consuming enterprises. Examples include the rush to submit a disclosure statement, secured creditors seeking relief from stay on collateral that was necessary for the DIP's attempt to reorganize, handling an adversary complaint brought against the DIP, preparing an initial plan of reorganization, handling the rejection of many leases, and

addressing difficulties the DIP was having with its factor.

Additionally, it is recognized that once the DIP's prospects for reorganization became no longer feasible (and prior to conversion), both Ms. Frayne and Mr. Bragg worked diligently to effectuate a sale of the DIP's collateral with the intent to produce a net profit to the estate. It is also noteworthy that after this case was converted to Chapter 7, the appointed trustee was able to utilize much of the legal ground work already laid by Ms. Frayne and Mr. Bragg to effectuate an orderly liquidation of the Debtor's assets. Finally, the fees of Ms. Frayne and Mr. Bragg must be viewed in the context that the DIP had both a significant amount of creditors and attendant debts.

Therefore, when viewing as a whole the nature, the extent and the value of all of those services performed by Ms. Frayne and Mr. Bragg, together with their respective law firms, there is nothing which would indicate to the Court that such services were either unnecessary or not beneficial to the estate at the time the services were rendered. In addition, the Court could not discern, after reviewing the itemized list of fees submitted by both Ms. Frayne and Mr. Bragg, any services that were duplicative as is prohibited under § 330(a)(4)(A)(i). Accordingly, to the extent that there is an objection to the legal fees of Ms. Frayne and Mr. Bragg under 11 U.S.C. § 330, such an objection is overruled. Before proceeding to the next issue, however, one final matter needs to be addressed.

In addition to Ms. Frayne's and Mr. Bragg's legal fees, Center Capital has also objected to Ms. Frayne's expenses on the grounds that, in accordance with the requirement set forth in § 330(a)(1)(B), such expenses were neither "actual" or "necessary." In particular, at the hearing held

on this matter, counsel for Center Capital pointed to Ms. Frayne's copying expenses as excessive. By way of specific example, Ms. Frayne had approximately $4,000.00 in copying charges for the month of February of 2002.

■■■ As used in § 330(a)(1)(B), an expense is "actual" to the extent that it is not based upon any sort of guesswork, formula, or pro rata allocation. *In re Williams*, 102 B.R. 197, 199 (Bankr.N.D.Cal.1989). An expense is necessary "if it was incurred because it was required to accomplish the proper representation of the client." *In re Spanjer Bros.*, 191 B.R. 738, 749 (Bankr. N.D.Ill.1996). As applied to this case, two observations support the conclusion that, contrary to Center Capital's position, the copying charges of Ms. Frayne were both "actual" and "necessary." First, when considering both the number of pleadings filed by the DIP and the number of creditors involved, it is apparent that in order for Ms. Frayne to comply with her duties to perfect service of the DIP's pleadings on the appropriate parties, significant copying charges had to be incurred. Moreover, given the scope of this case, copying charges for other tasks—i.e., letters and correspondences—had to be significant. Thus, pursuant to 11 U.S.C. § 330(a)(1)(B), this Court has no basis to conclude that Ms. Frayne's copying expenses were anything but "actual" and "necessary."

The second overall issue to address in this case arises from that portion of the UST's Motion where an order is sought

vacating the prior retention orders of Ms. Frayne and Mr. Bragg as legal counsel for the DIP. Concerning this request, the single question raised is whether the fee guaranty executed in favor of Ms. Frayne and Mr. Bragg disqualified them from representing the DIP? Section 327(a) of the Bankruptcy Code governs this issue.

■■■ Section 327(a) was enacted to ensure impartiality in bankruptcy representation. *Electro–Wire Prods. v. Sirote & Permutt, P.C. (In re Prince)*, 40 F.3d 356, 360 (11th Cir.1994). To effectuate this purpose, this provision provides, in relevant part:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, ... or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Thus, based upon the explicit language of § 327(a), two requirements must be met before an attorney may be employed by a debtor [2] for legal representation: (1) the attorney may not hold or represent an interest adverse to the estate; and (2) the attorney must be disinterested. *In re Eagle–Picher Industries, Inc.*, 999 F.2d 969, 971 (6th Cir.1993). An attorney who, at any time, fails to meet these requirements is subject to having both compensation for services and reimbursement of expenses denied pursuant to 11 U.S.C. § 328(c). [3]

---

**2.** This section refers to the powers of a "trustee," but under 11 U.S.C. § 1107(a), a debtor in possession has the same rights, powers, and duties as a trustee.

**3.** This section provides, "[e]xcept as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed

under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."

■ For purposes of § 327(a), a "disinterested person" is statutorily defined, in part, as a "person that does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ..., or for any other reason[.]" 11 U.S.C. § 101(14)(E). In a like manner, and although not statutorily defined, an "adverse interest" as used in § 330(a), may be defined as, (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant, or (2) to possess a predisposition under circumstances that render such a bias against the estate. *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello),* 134 F.3d 831, 835 (7th Cir.1998).

■ An attorney who represents a debtor owes allegiance to the debtor, and not to its stockholders, officers or directors. *Hansen, Jones & Leta, P.C. v. Segal,* 220 B.R. 434, 469 (D.Utah 1998). However, given human nature, it is also clear that an attorney's loyalty to her client may be strained if the attorney's fees do not come from the client, but instead come from a third-party. As explained by the court in *In re Hathaway Ranch Partnership:*

> Third parties do not transfer property or funds to an attorney to represent a debtor in possession unless that representation is in the best interest of the third party. It is often the case that the interests of the third party are not identical to the interests of the debtor in possession in its role as fiduciary of the bankruptcy estate. Thus by accepting payment from a third party, the proposed counsel for the debtor in possession necessarily has a conflict of interest

in that counsel is serving two masters— the one who paid counsel and the one counsel is paid to represent.

116 B.R. 208, 219 (Bankr.C.D.Cal.1990). Thus, it follows that when the insider(s) of any debtor-corporation guaranties the fees and expenses of the debtor-corporation's legal counsel, a significant potential exists in which counsel would be unable to represent the debtor-corporation pursuant to the "disinterestedness" and "adverse interest" standard of § 327(a).

Concerning an attorney's divided loyalties, and in support of its position that neither Ms. Frayne nor Mr. Bragg meet the "disinterestedness" and "adverse interest" requirements of § 327, the UST cites to the cases of *In re Bergdog,* 7 B.R. 890, (Bankr.D.Hawaii 1980), and *In re Senior G & A Operating Company, Inc.,* 97 B.R. 307 (Bankr.W.D.La.1989). According to the UST, these cases stand for the proposition that a "professional who receives compensation and a fee guarantee from an [insider] has a conflict of interest which precludes representation." (Doc. 499, at pg. 5). Taken then to its logical conclusion, the UST espouses the position that when an insider(s) guaranties a corporate-debtor's fees and expenses, there exists a per se disqualification for employment under § 327(a).

In analyzing the cases cited by the UST, they do appear to support the position that a fee guaranty made to an attorney by an insider precludes, as a matter of law, that attorney's representation of the debtor-corporation under § 327(a). For example, in *In re Bergdog,* a case in which attorney fees were paid and guaranteed by stockholders of the debtor-corporation, the court held that, notwithstanding the attorney's best efforts, by accepting compensation from the shareholder, the applicant changed an otherwise delicate situation into a situation in which an actual conflict

of interest existed. 7 B.R. at 892. Similarly, in *In re Senior G & A Operating Company, Inc.*, two shareholders guaranteed the fees of the law firm representing the debtor-corporation. In addressing this arrangement, the court stated:

> The guaranty of the fees of attorneys for the Debtor may raise a question as to whom the attorneys are actually representing. Counsel's duty of undivided loyalty runs to the Debtor. That duty cannot be compromised by insiders who guaranty compensation. Insiders have been known to make prepetition transfers for personal benefit; to withdraw capital contributions under the guise of repayment of personal loans made to the debtor; to satisfy debts guaranteed by them in preference to nonguaranteed obligations; and to transfer business opportunities of a debtor to a new entity. By accepting a guaranty from an insider, a debtor's counsel may have created a potential conflict of interest.

97 B.R. at 311.

A major weakness, however, with adopting a per se rule against an insider's fee guaranty is that it does not allow the Court to take into account the unique characteristics of each case. Of special concern, is the reality that many small closely-held corporations facing the prospect of bankruptcy do not have the funds available to obtain legal counsel, and therefore must rely upon insiders to finance their legal representation. *See In re Lotus Properties LP*, 200 B.R. 388, 393 (Bankr.C.D.Cal. 1996). Thus, to adopt a per se rule against insiders providing a fee guaranty could effectively preclude a large class of debtors from seeking bankruptcy protection. As such, a per se prohibition against insiders providing guaranties clearly goes against the bankruptcy policy that, unless a provision specifically provides otherwise, the Bankruptcy Code should be based upon an equitable approach as opposed to hard and fast rules which do not leave any room for crafting an appropriate remedy.

Accordingly, contrary to the UST's position, this Court declines to rule that, as a matter of law, an insider(s) may not guarantee the fees of a corporate-debtor under the standard enumerated in § 327(a). However, given the great potential for conflict, the Court will carefully scrutinize the overall arrangement so as to insure that it was reasonable, that is was negotiated in good faith, and that it was necessary as a means of insuring the engagement of competent counsel. In making this determination, the Court finds illustrative the factors set forth in *In re Kelton Motors Inc.*, 109 B.R. 641 (Bankr.D.Vt.1989), which, like the instant case, involved the allowance of an insider's fee guaranty under § 327. These considerations are:

> (1) the arrangement must be fully disclosed to the debtor/client and the third party payor-insider;
>
> (2) the debtor must give express consent to the arrangement;
>
> (3) the third party payor-insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client;
>
> (4) the factual and legal relationships between the third party payor-insider, the debtor, their respective attorneys, and their contractual arrangement concerning the fees must be fully disclosed to the Court at the outset of the debtor's bankruptcy representation;
>
> (5) the debtor's attorney-applicant must demonstrate and represent to the Court's satisfaction the absence of facts that would otherwise create non-disinterestedness, actual conflict, or impermissible potential for a conflict of interest.

*Id.* at 658. In this Court's view, utilizing these factors will permit flexibility when equity so requires, while still ensuring that the "adverse interest" and "disinterested" requirements of § 327(a) are met.

In applying the above factors to the instant case, there does not appear to be any disagreement that the insiders of the DIP were represented by independent legal counsel at the time they executed their fee guaranty in favor of Ms. Frayne and Mr. Bragg. In addition, it is presumed that Ms. Frayne and Mr. Bragg took proper measures to ensure that the DIP was properly represented concerning its interest in the Guaranty. Thus, the first three of the above factors clearly would call for allowing Ms. Frayne and Mr. Bragg to continue their representation of the DIP, after the execution of the Guaranty.

On the other hand, the fourth factor, as set forth above, clearly goes against allowed representation as Ms. Frayne and Mr. Bragg, by their own admission, did not disclose the Guaranty from the onset of its execution, but instead allowed a delay of well over three months before making the Guaranty known to the Court. However, as set forth in the fifth factor, it is even more troubling to the Court the extent to which the financial interests of Ms. Frayne and Mr. Bragg became intertwined with those insiders of the DIP. Moreover, when this fact is viewed together with the failure of Ms. Frayne and Mr. Bragg to timely disclose their Guaranty, it is this Court's judgment that, despite compliance with the first three factors of the *In re Kelton Motors* test, Ms. Frayne and Mr. Bragg do not meet the "adverse interest" and "disinterestedness" standards of § 327. The following details why.

First, Ms. Frayne and Mr. Bragg, who are fiduciaries to the DIP's bankruptcy estate, did not seek a fee guaranty from one insider or a group of similarly situated insiders. Rather, the various insiders who guaranteed the fees of Ms. Frayne and Mr. Bragg have very different roles with the DIP, and thus very divergent interests. For example, Bruce Swonger's interest in the DIP encompasses five roles— a shareholder, an officer, a personal guarantor of debt, a secured creditor and an unsecured creditor of the DIP. This, of course, is very different from that of his father B.J. Swonger, who has no personal liability vis-a-via the DIP, but is instead just a secured creditor. Similarly, Bruce Swonger's interest via the DIP is very different to that of Shawn Mir, given that Mr. Mir's role with the DIP is limited to that of a corporate officer and shareholder. In fact, except for possibly B.J Swonger and his wife Mary Belle Swonger, no two insiders have identical roles with the DIP. Moreover, given that some insiders are both equity owners and creditors (both secured and unsecured), such insiders, personally, have a divided interest towards the DIP. Thus, given the multiple roles some insiders hold—i.e., creditor, shareholder, officer—it is hard to imagine that there is anywhere near a unity of interest as it concerns the DIP. Accordingly, it would seem all but impossible for Ms. Frayne and Mr. Bragg to reconcile their roles as fiduciaries to the DIP's estate, while at the same time seeking a guaranty of their fees from a group of people who clearly have multiple and divergent interests toward the DIP.

The impermissible conflict of interest created by the Guaranty is also clearly exemplified by events leading up to its execution, where both Ms. Frayne and Mr. Bragg failed to disclose to the Court or to other creditors those checks issued by the DIP which were returned on account of insufficient funds. Such information certainly would have been important to both

the Court and to other creditors in making determinations concerning the continued feasibility of the DIP's operations. However, instead of informing the Court and the DIP's creditors of the checks, it is apparent that given timing of the checks— i.e., they were issued on February 8, 2002 and February 11, 2002, just before the execution of the Guaranty—the attention of Ms. Frayne and Mr. Bragg was focused not exclusively on their fiduciary duties to the DIP's estate, but was instead focused on their fees. As such, the Court simply cannot believe that once the Guaranty was in place, that both Ms. Frayne and Mr. Bragg would not have been influenced, in a very significant manner, by the wishes of the DIP's insiders.

It is also troublesome to the Court that at the time the Guaranty was executed in this case, it appeared likely that its utilization was not just a remote contingency—as Ms. Frayne has suggested—but was instead a source from which both Ms. Frayne and Mr. Bragg would likely look to receive payment. In fact, the last payment Ms. Frayne and Mr. Bragg received from the DIP occurred on the very same day the Guaranty was executed. Furthermore, even if this was not known at the time, it must have been clear to both Ms. Frayne and Mr. Bragg that their fees were potentially in jeopardy given that at this same time they knew the DIP's chance for a successful reorganization was becoming unrealistic.

In conclusion then, the Court holds that upon execution of the Guaranty, neither Ms. Frayne nor Mr. Bragg was entitled to be employed pursuant to § 327 of the Bankruptcy Code. Accordingly, this Court's retention order, dated November 14, 2001, of Ms. Frayne and Mr. Bragg as legal counsel for the DIP is vacated effective February 22, 2002. As such, any fees and expenses incurred after this date are not entitled to be paid as an administrative expense pursuant to Bankruptcy Code sections 327(a), 328(c), 330, 503 and 507. Respectively, these disallowed fees and expenses are: $44,096.17 in post-guaranty fees and expenses for Ms. Frayne; and $8,067.98 in post-guaranty fees and expenses for Mr. Bragg. Thus, after subtracting these amounts from the total fees and expenses requested, Ms. Frayne's total allowed remuneration under § 327 is $157,966.03, while Mr. Bragg's allowed remuneration under § 327 is $36,526.22.

Turning now to the last issue raised in this case, the question is whether, pursuant to the Motion filed by the UST, the Court should require Ms. Frayne and Mr. Bragg to disgorge their fees.

Bankruptcy courts have the inherent power to sanction parties, including attorneys, for improper conduct. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir.1996). The type of sanctions available to the court may include not only the denial of compensation but, as the UST argues, the disgorgement of fees. *Id.* In this case, the improper conduct giving rise to the UST's Motion to disgorge fees is based entirely upon the failure of both Ms. Frayne and Mr. Bragg to timely disclose the existence of their fee guaranty with the insiders of the DIP.

Based upon the dual concerns of overreaching by an attorney and the serious potential for evasion of the creditor-debtor protection provisions of the Bankruptcy Code, any attorney representing a debtor must disclose certain information regarding fees. H.R.Rep. No. 595, 95th Cong., 1st Sess. 329 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 39 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5825, 6285. To begin with, § 329(a) sets forth the following fee disclosure requirements:

Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

Bankruptcy Rule 2016(b)[4] requires that this information be disclosed within 15 days after the order for relief, or "within 15 days after any payment or agreement not previously disclosed."

▪ In addition, Bankruptcy Rule 2014(a) requires that any attorney wishing to be employed pursuant to § 327 of the Bankruptcy Code, file with the Court and the UST an application wherein certain information relating to the attorney's employment is disclosed. This information includes, among other things, "any proposed arrangement for compensation." Although no ongoing disclosure requirement is explicitly set forth in Rule 2014(a),

as is the case with Bankruptcy 2016(b), case law has uniformly held that under Rule 2014(a), (1) full disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly notify the court if any potential for conflict arises.[5]

▪ Looking now at the particular circumstances in this case, it is clear that the execution of the Guaranty made those insiders associated with the DIP a potential source of income for both Ms. Frayne and Mr. Bragg. As such, it would seem to naturally follow that the Guaranty would be encompassed within the meaning of "the source of such compensation" for purposes of Rule 2016(b) and "any proposed arrangement for compensation" under Rule 2014(a). Ms. Frayne, however, argues otherwise, asserting that since the contingencies contained in the Guaranty have not yet arisen—that is, the insiders of the DIP have not been required to make any payments to Ms. Frayne or Mr. Bragg—its disclosure was not actually required. However, no supporting authority was offered for this proposition. In addition, a couple of considerations clearly point to the contrary.

4. This provision provides, in full, "[e]very attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed."

5. *In re Tomczak,* 283 B.R. 730, 734–35 (Bankr.E.D.Wis.2002); *In re United Companies Fin. Corp.,* 241 B.R. 521, 529–530 (Bankr.D.Del.1999); *see also In re Granite Partners, L.P.,* 219 B.R. 22, 35 (Bankr. S.D.N.Y.1998) (noting that although Rule 2014(a) does not expressly require supplemental disclosures, they are necessary to preserve the integrity of the bankruptcy process); *In re C & C Demo, Inc.,* 273 B.R. 502, 507 (Bankr.E.D.Tex.2001) (although Rule 2014(a) does not expressly require supplemental or continuing disclosure, duty is implied pursuant to § 327); *In re Weaver Potato Chip Co., Inc.,* 243 B.R. 737, 740 (Bankr.D.Neb.2000) (Rule 2014(a) requires ongoing disclosures); *In re Keller Fin. Serv. of Florida,* 243 B.R. 806, 813 (Bankr.M.D.Fla.1999) (duty of continuing disclosure under Rule 2014(a) is implied by requirements of § 327).

To begin with, the mere fact that the source of an attorney's fees come from a third-party does not negate the requirement of the attorney to disclose such information to the Court pursuant to § 329(a). *In re Brandenburger,* 145 B.R. 624, 628 (Bankr.D.S.D.1992). Additionally, policy considerations, such as concern for an attorney's overreaching, clearly dictate that the disclosure requirements for professionals are not meant to be read in such a way that limits the types of arrangements that need to be disclosed; rather, the disclosure requirements for professionals under the bankruptcy laws are meant to be read in such a way so as to comport with the bankruptcy policy that the relationship of professionals representing a debtor, as well as the fees charged by the professional, are to be carefully scrutinized so as to ensure fairness and impartiality. *In re Bellevue Place Assc.,* 171 B.R. 615, 626 (Bankr.N.D.Ill.1994).

Accordingly, when all things are considered, the approach espoused by Ms. Frayne clearly does not align itself with the attorney fee disclosure requirements of bankruptcy law. As such, it is the holding of this Court that any fee guaranty made in favor of a professional must be disclosed to the Court in accordance with the requirements of § 329 together with Bankruptcy Rules 2014(a) and 2016(b). In this case, therefore, since both Ms. Frayne and Mr. Bragg, having disclosed the Guaranty in a very dilatory manner, clearly did not comply with the fee disclosure requirements of bankruptcy law, a determination must now be made what, if any, sanctions should be imposed.

When, in violation of bankruptcy law, an attorney fails to properly disclose the nature of his or her fee arrangement with the debtor, a bankruptcy court has the inherent power to either partially or fully deny compensation, and to also order either the full or partial disgorgement of any fees already received. *In re Kisseberth,* 273 F.3d 714, 721 (6th Cir. 2001); *Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994). In this regard, it is not for the attorney to decide what information is important; instead, it is incumbent upon the attorney to fully disclose any and all relevant information concerning his or her fees so as to enable the court to make a meaningful and thorough review of the fee arrangement. *In re Keller Fin. Serv. of Florida, Inc.,* 248 B.R. 859, 885 (Bankr. M.D.Fla.2000). The importance of this rule is clearly exemplified by the facts of this case where, as previously discussed, it had already been found that, on account of the Guaranty, both Ms. Frayne and Mr. Bragg cannot be employed by the DIP under § 327.

For purposes of this case, the UST seeks the complete disgorgement of all of the fees Ms. Frayne and Mr. Bragg have received to date. Presently, and although no actual allocation has been made between fees and expenses, this amount totals $61,440.50.(Docs. 622 & 627). In response, Ms. Frayne and Mr. Bragg argue that they should not be required to disgorge their fees because their violation of the disclosure requirements under bankruptcy law was unintentional, thereby making the sanction of disgorgement incommensurate with their actions.

In *In re Downs,* the Sixth Circuit Court of Appeals specifically addressed the issue of a fee disgorgement in the context of an attorney who failed to comply with the fee disclosure requirements of § 329 and Bankruptcy Rule 2016(a). 103 F.3d at 476. Briefly, the underlying facts of *In re Downs* involved a creditor who contacted an attorney regarding replacing the existing attorney for the debtor on account of the latter attorney's illness. Upon retention, the new attorney was paid a

$40,000.00 retainer from a company owned by the debtor's children, which, in turn, had received the money from the creditor that had contacted the new attorney. Based upon this arrangement, the bankruptcy court sanctioned the new attorney by reducing his fee award by Twenty Thousand Dollars ($20,000.00).

 The Sixth Circuit, however, while agreeing that the bankruptcy court should have sanctioned the attorney, overruled the bankruptcy court, holding that the attorney should be required to disgorge his entire retainer. In so holding, the Sixth Circuit set forth the following principles to apply with respect to attorneys who fail to comply with the disclosure requirements of § 329 and Bankruptcy Rule 2016:

(1) Bankruptcy courts have a "great deal of latitude in fashioning an appropriate sanction." *Id.* at 478.

(2) "When a bankruptcy court metes out a sanction, it must exercise such power with restraint and discretion." "The sanctioned levied must thus be commensurate with the egregiousness of the conduct." *Id.*

(3) Although, a mere "technical breach" does not call for the denial of all fees, when an attorney "exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016," the only proper sanction is the complete denial of all fees.

(4) Normally, the sanction for an attorney's failure to disclose his fee arrangement under § 329 and Bankruptcy Rule 2016 is the denial of all fees. *Id.* at 478.

*Id.* at 479. In setting forth these principles, the Sixth Circuit stated, "[s]ection 329 and Rule 2016 are fundamentally rooted in the fiduciary relationship between attorneys and the courts. Thus, the fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceeding before the bankruptcy courts." *Id.* at 480. It therefore follows, that the above principles would be equally applicable to an attorney who, like in the instant case also violated the disclosure requirement of Bankruptcy Rule 2014(a), because like §. 329 and Bankruptcy Rule 2016, Bankruptcy Rule 2014 is based upon the fiduciary duties the attorney for the debtor owes to the debtor's estate. *In re Black Hills Greyhound Racing Ass'n,* 154 B.R. 285 (Bankr.D.S.D. 1993).

 In support of the position that their violation of Bankruptcy Rules 2014(a) and 2016(b) was unintentional, or merely a technical breach, and thus not subject to sanctions, Ms. Frayne and Mr. Bragg argue that based upon the immediate and pressing needs of the DIP's case at the time the Guaranty was executed, disclosing the Guaranty was simply overlooked. From even an initial standpoint, however, the Court has difficulty with this argument because if the needs of the DIP's case were truly so pressing and urgent so as to cause the disclosure of the Guaranty to become simply overlooked, then the question becomes how did Ms. Frayne and Mr. Bragg find the time to have the Guaranty executed at all. Stated directly to the point, if the time and resources were available to execute the Guaranty, then the time and resources were available to properly disclose the Guaranty. Moreover, Ms. Frayne and Mr. Bragg surely were not ignorant of their duty to disclose any and all fee arrangements because, as the UST correctly points out, both Ms. Frayne and Mr. Bragg are experienced bankruptcy counsel.

However, especially damaging to the supposed technical nature of Ms. Frayne's and Mr. Bragg's violation of Bankruptcy Rules 2014(a) and 2016(b) are these two

interrelated observations. First, the failure of Ms. Frayne and Mr. Bragg to timely disclose the Guaranty is not measured in days or even weeks, but is instead measured in months. Second, the Guaranty was not voluntarily disclosed, but instead only came to the Court's attention after its existence had been brought to the attention of the UST. These observations are especially troubling as they seem to show an intent on the part of Ms. Frayne and Mr. Bragg to hide the existence of the Guaranty from the Court. Thus, given all of these negative considerations, it is the judgment of this Court that the greater weight of evidence lends itself to a finding that both Ms. Frayne and Mr. Bragg willfully disregarded their fiduciary duties under Bankruptcy Rules 2014(a) and 2016(b). As such, sanctions are appropriate in this case.

As set forth above, the Sixth Circuit has held that normally an attorney will be required to disgorge his or her entire fees when they willfully disregard their duty to disclose required information relating to their representation of the debtor. On the other hand, *In re Downs* does not necessarily mandate that under all circumstances involving a willful disregard of fiduciary duties, must an attorney be required to disgorge his or her entire fees. Instead, the Sixth Circuit left open the ability of a bankruptcy court to impose a lesser sanction if unique circumstances presented themselves. This conclusion is derived from the Sixth Circuit's holding, as set forth above, that a bankruptcy court is to be given a "great deal of latitude in fashioning an appropriate sanction" and that when the court "metes out a sanction, it must exercise such power with restraint and discretion." In fact, in *In re Kisseberth,* the Sixth Circuit specifically upheld a ruling in which, based upon an attorney's violation of the fee disclosure requirements of § 329 and Bankrupt-

cy Rule 2016(b), the bankruptcy court required disgorgement of most, but not all of the attorney's fees. 273 F.3d 714, 720–21 (6th Cir.2001).

In applying these principles to this case, it is apparent that sufficiently unique circumstances exist to permit the Court to impose a sanction of less than a total disgorgement of fees. The unusual circumstances presented in this case arise from the fact that, unlike most situations involving disgorgement where a breach of fiduciary duty exists from the onset of the case, the breach of fiduciary duty committed by Ms. Frayne and Mr. Bragg in this case did not arise until after the DIP's case had been pending for a significant period of time.

In *In re Downs,* for example, the failure to disclose, which the Sixth Circuit determined required complete disgorgement of all fees paid, occurred at the very outset of the representation. Other cases have followed a similar pattern: presenting false information in initial application for employment is grounds for disgorgement, *In re Lewis,* 113 F.3d 1040 (9th Cir.1997); disgorgement of fees required when attorney failed to disclose a prepetition contingent fee arrangement, *In re Cook,* 223 B.R. 782 (10th Cir. BAP 1998); attorney's failure to disclose all connections with debtor and to disclose all payments received, even if services were not legal in nature, from debtor in initial employment application warranted denial of all fees and disgorgement of any prepetition retainer, *In re Maui,* 133 B.R. 657 (Bankr.D.Hawaii 1991); attorney who, at commencement of case, filed a false 2016(b) statement, overstating the amount of money paid to him, and then accepted additional payments postpetition without filing supplemental disclosures, required to disgorge fees, *In re Levin,* 1998 WL 732878 (Bankr. E.D.Pa.).

Of special importance to the Court in this case is that originally the UST raised § 327 conflict of interest concerns in its initial objection to Ms. Frayne's employment. These concerns, however, were subsequently resolved favorably to Ms. Frayne, and up until the execution of the Guaranty, some four months later, there is no evidence of any lack of disinterestedness or of any failure to disclose required information on the part of either Ms. Frayne or Mr. Bragg. Additionally, and as previously discussed, the services performed by Ms. Frayne and Mr. Bragg during the time before the Guaranty was executed were both necessary and beneficial to the DIP's estate, thus making the fees otherwise compensable under § 327 and § 330.

Based, therefore, upon this Court's explicit approval of employment for Ms. Frayne and Mr. Bragg, together with the beneficial services performed by them, it would seem highly unnecessary, as well as patently unfair, to require the disgorgement of all of the fees Ms. Frayne and Mr. Bragg have received for the performance of their legal services. At the same time, it is equally clear that, as previously discussed, the failure of Ms. Frayne and Mr. Bragg to disclose the Guaranty was not simply the result of simple oversight or neglect. Thus in balancing these competing concerns, the Court, after giving the matter very careful consideration, finds that it would be just and appropriate to require Ms. Frayne and Mr. Bragg to disgorge $6,500.00. This amount represents the fees the DIP paid to Ms. Frayne and Mr. Bragg on February 22, 2002—the same day on which the Guaranty was executed—which in this Court's view are simply too intertwined with the Guaranty to be allowed as compensation.

In addition, to ensure that neither Ms. Frayne or Mr. Bragg subvert this sanction by continuing to collect on their remaining allowed fees, the Court will, pursuant to its powers under 11 U.S.C. § 105(a), enjoin both Ms. Frayne and Mr. Bragg from attempting to collect from the DIP any further unpaid fees and/or expenses. These fees include the $6,500.00 dollars paid to Ms. Frayne on February 22, 2002 and those other fees and expenses which, pursuant to this Court's previous discussion, would have otherwise been allowed under § 327.

The allowed, unpaid fees and expenses owed to Ms. Frayne and Mr. Bragg would be administrative expenses of the Chapter 11 estate. 11 U.S.C. § 503(b)(2). As such, they are also a first priority expense under 11 U.S.C. § 507(a)(1). But they would only be entitled to be paid pro rata with other unpaid Chapter 11 expenses, which are in turn subordinate to administrative expenses of the Chapter 7 estate. 11 U.S.C. § 727(b). Although the Court does not find complete disgorgement of the fees actually paid to Ms. Frayne and Mr. Bragg a necessary or appropriate sanction, the Court does not think that the unpaid fees and expenses from on and before February 22, 2002, including the fees required to be disgorged by this decision, should be afforded the same treatment as other Chapter 11 administrative expenses. All creditors and parties in interest were entitled to know about the Guaranty in timely fashion and are therefore affected as a matter of law by the failure to disclose. But the parties in interest most likely to have been practically affected by the failure to disclose the fee guaranty, born of checks returned for insufficient funds and indicative of counsels' growing lack of faith in the DIP's future prospects for reorganization, were other Chapter 11 administrative expense claimants continuing to do business with the DIP. This information would have been particularly important in the instant case to that class of claimants.

Therefore, in addition to subverting the disgorgement required by this decision, it would be unfair to creditors and especially administrative expense claimants for Ms. Frayne and Mr. Bragg to otherwise be permitted to collect their unpaid administrative expenses from on and before February 22, 2002.

In this Court's view, this dual sanction metes out an appropriate penalty as it is severe enough to deter future conduct of a similar nature, while at the same time it ensures that the penalty is commensurate with and relates to the severity of the offense.

In summation, the Court first rejects Center Capital's objection that the fees and expenses of Ms. Frayne and Mr. Bragg were excessive under 11 U.S.C. § 330. Second, since the time the Guaranty was executed on February 22, 2002, neither Ms. Frayne nor Mr. Bragg has been disinterested within the meaning of § 327(a). Therefore, since this date, neither Ms. Frayne or Mr. Bragg were entitled to be employed as an attorney for the DIP, and as a consequence neither are entitled to be compensated from the estate for the services performed after February 22, 2002.

Finally, the Guaranty executed for the benefit of Ms. Frayne and Mr. Bragg was required to be disclosed in accordance with 11 U.S.C. § 329 and Bankruptcy Rules 2014(a) and 2016(b). Both Ms. Frayne and Mr. Bragg, however, in not timely disclosing the existence of the Guaranty, failed to comply with these provisions of bankruptcy law. Furthermore, given the circumstances surrounding the late disclosure of the Guaranty, it is apparent that at least some degree of scienter was present, thereby necessitating the imposition of sanctions.

Notwithstanding, given that the Guaranty was not executed until after both Ms. Frayne and Mr. Bragg had performed a significant amount of beneficial services for the DIP, the Court will not require the total disgorgement of fees already received. Instead, the Court will only require Ms. Frayne and Mr. Bragg to disgorge a total of $6,500.00 in fees, which amount represents those fees received by Ms. Frayne and Mr. Bragg from the DIP on the date the Guaranty was executed. This amount shall be apportioned as follows: Ms. Frayne, having accepted 84.8% of the total payments received ($52,099.93 out of payments totaling $61,440.50), will be required to disgorge $5,511.83; Mr. Bragg, having accepted 15.2% of the total payments received ($9,340.57 out of payments totaling $61,440.50), will be required to disgorge $988.17. In addition, to properly effectuate this sanction, both Ms. Frayne and Mr. Bragg will be permanently enjoined from collecting any further fees or expenses from the estate.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Objection of Center Capital Corporation to the Second and Final Application of Anne M. Frayne and Michael W. Bragg, Counsel for the Debtor–in–Possession, for Allowance of Chapter 11 Compensation and Reimbursement of Fees, be, and is hereby, OVERRULED.

It is **FURTHER ORDERED** that the United States Trustee's Motion to, among other things, disgorge fees is GRANTED IN PART and OVERRULED IN PART as follows:

It is **FURTHER ORDERED** that this Court's retention order, dated November 14, 2001, permitting Ms. Frayne and Mr. Bragg to be retained as legal counsel for

the Debtor, Metropolitan Environmental, Inc., be, and is hereby, vacated effective February 22, 2002.

It is *FURTHER ORDERED* that Anne M. Frayne disgorge fees of $5,511.83 to the bankruptcy estate of the Debtor, Metropolitan Environmental, Inc., with the payment to be made within 30 days of the date of this order and with confirmation of the payment to be filed with the Court.

It is *FURTHER ORDERED* that Michael W. Bragg disgorge fees of $988.17 to the bankruptcy estate of the Debtor, Metropolitan Environmental, Inc., with the payment to be made within 30 days of the date of this order and with confirmation of the payment to be filed with the Court.

It is *FURTHER ORDERED* that, pursuant to 11 U.S.C. § 105(a), Anne M. Frayne and Michael Bragg are hereby permanently enjoined from collecting any further fees and/or expenses from the Debtor, Metropolitan Environmental, Inc.